E. P. WALTERS v. JAMES I. MOORE and others.

*Executions—Sheriff cannot contradict his return thereon, but if erroneous may apply to court to have it corrected.*

1. An execution returned into court with an entry of satisfaction endorsed, in whole or in part, extinguishes so much of the debt and becomes a part of the record in the case. The officer cannot be heard to deny or contradict his return: as to him it is conclusive, and he and the sureties upon his bond are liable to the plaintiff in the execution for the sums so endorsed.

2. If the return in such case be erroneous, the officer may have the same corrected upon a direct application to the court for that purpose

(*Bank* v. *Twitty*, 2 Hawks, 5; *Governor* v. *Twitty*, 1 Dev., 153; *McKellar* v. *Bowell*, 4 Hawks, 34; *Snead* v. *Rhodes*, 2 Dev. & Bat., 386; *Piggott* v. *Davis*, 3 Hawks, 25; *Poor* v. *Deaver*, 1 Ired., 391; *Edwards* v. *Tipton*, 77 N. C.,

222; *Smith* v. *Low*, 5 Ired., 197; *Patterson* v. *Britt*, 11 Ired., 383; *Bland* v. *Whitfield*, 1 Jones, 122; *Simpson* v. *Hiatt*, 13 Ired., 470; *Hardin* v. *Cheek*, 3 Jones, 135, cited and commented on).

CIVIL ACTION heard upon exceptions to a referee's report at Fall Term, 1883, of GRANVILLE Superior Court, before *MacRae, J.*

The defendant James I. Moore, who had held the office of sheriff of Granville county for several successive terms, was re-elected at the election held in 1874, and on the 7th day of September following, with the other defendants, his sureties, executed the official bond described in the complaint and now in suit, in the penal sum of ten thousand dollars.

At spring term, 1873, the relator recovered judgment against one N. G. Whitfield for the sum of $1,271.95, with interest thereafter on $995.00, the principal money part thereof besides costs, in the superior court of said county, and on July 8th thereafter caused execution to be issued and delivered to said Moore, as sheriff.

On October 8th the said Whitfield paid to him in money $600, and it was agreed that the sum of $150, then due from Moore to Whitfield, upon the sale of a horse, should be added thereto, and accordingly the former gave his receipt for the sum of $150, as paid on the execution. The writ was, however, returned with a credit endorsed of $600 as paid and applied thereto, the said Moore, in disregard of his promise, applying the additional sum to a larger debt due from Whitfield to him on personal transactions between them. Upon the writ was also endorsed a levy upon certain lands of the debtor.

From fall term, 1873, a writ of *venditioni exponas*, with a *fieri facias* clause, bearing the endorsement of the sum of $600 previously paid and appropriated, issued to the said sheriff, returnable to spring term, 1874, under which he received and paid over to the relator's attorney the further sum of $200. A second similar writ bearing credits for the two payments

endorsed thereon, returnable to fall term, 1874, issued and came into the hands of one John G. Jones, a regular deputy of the sheriff, who called on the debtor for payment.

Thereupon, Whitfield informed the deputy of his sale of the horse to the sheriff for $150, which was to have been entered as a part payment of the debt, and the latter being personally cognizant of the sale and at the price stated, entered this credit also in this form, under those endorsed by the clerk, omitting so much, as was applied to the costs:

CR.

By $550.80 paid John W. Hays, attorney, 27th Oct., 1873.
By $200.00 paid John W. Hays, attorney, 27th Apl., 1874.
By $150.00 paid sheriff.

This last credit was made, and was intended by the deputy to remain until he could confer with his principal, and when he did see him, he received a statement of the transaction and agreement with Whitfield already explained.

The writ was returned with these credits, and others followed, upon all of which the same were entered and came into the sheriff's hands, until, by reason of his failure to renew his official bond, the office became vacant, and his successor was qualified on September 14, 1875.

Such are the material facts found and reported by the referee, and sufficient to a proper understanding of his deduced conclusions of law.

The plaintiff insisted that the endorsed payment of $150 operated, as long as it remained, as a reduction of the debt, in favor of Whitfield, and that no evidence was competent to impair its effect or explain it away.

. The referee ruled otherwise, and, admitting evidence of the facts offered in explanation, held that the entry of the credit was but *prima facie* evidence that payment was made, and this was

repelled; and further, that the bond in suit was not chargeable with the default, if there be such, in not paying over that sum to the relator.

To this the plaintiff excepts, and the report being confirmed, appeals to this court.

*Messrs. John W. Hays, D. G. Fowle* and *John Devereux,* for plaintiff.

*Mr. Thomas B. Venable,* for defendants.

SMITH, C. J., after stating the case. The agreement that the sum due from the sheriff to the debtor should be added to the money paid and the aggregate amount applied to the execution, was not carried into effect; and hence it was not a payment in fact for which the bond then in force was chargeable. But the appropriation was afterwards made and endorsed as a credit by the deputy, and imposes the obligation, if any was incurred, upon the bond executed by the defendants, and upon which the action is brought.

The only inquiry then is as to the legal effect of the entry made by the deputy and continued on the subsequent successive writs issued to the sheriff and returned by him, without an application to the court for leave to strike out or amend the return in any particular, and by which writs he was authorized, regarding these credits as for actual payments, to collect only their residue of the relator's judgment.

With this acquiescence and sanction given to the endorsement of the payment embodied in the return of the execution to fall term, 1874, the question is presented in the overruled exception as to the competency of the evidence in disproof of the payment, in examination of the defendants—the evidence furnished in the return being admissible against the sureties as well as against the officer, their principal, under the act of 1844. THE CODE, §1375.

The question is not free from difficulty, and the authorities in this state seem not to be in harmony, and it becomes necessary

to examine them, and, if practicable, extract some general rule consistent with the adjudications upon the subject.

In *State Bank* v. *Twitty*, 2 Hawks, 5, a motion was made for judgment against the sureties to the sheriff's bond given in 1820, for default in not paying over a sum of money collected under an execution returnable to fall term, 1820, of the superior court of Burke, and upon which was endorsed the following entry: "Received of the within execution eight hundred dollars.  F. F. Ally."

The defendant offered to prove that the money was paid to the sheriff Ally in the year preceding, when the *capias ad respondendum* was executed, to be applied to the execution when it should issue after the rendition of judgment.

HALL, J., speaking for the court, held such evidence competent, declaring, that "the return of the sheriff is only *prima facie* evidence against his sureties.   It is not conclusive."

The judgment having been arrested, a new action was brought, and the same question came before the court in *Governor* v. *Twitty*, 1 Dev., 153, in which the same judge thus expresses himself in reference to the previous ruling: "Speaking for myself, I was too much influenced by the reasoning on behalf of the sureties, which has since been adopted in *McKellar* v. *Bowell*, 4 Hawks, 34, without observing its total inapplicability to the case.   There, the decree was not permitted to be received as evidence against the sureties because they were not parties to it, and because the evidence on which it rested might again be brought before the court, when they became parties in any other suit, and so, in this case, it was said the sheriff's return was not conclusive evidence—that the question still was open, had the sheriff in fact received the money, although his return stated that he had.   But I think the *sheriff's return conclusive of the question*, because, as long as that return stands, the plaintiff has no remedy against the defendant for the amount which the sheriff's return states to be received."

Again in *Snead* v. *Rhodes*, 2 Dev. & Bat., 386, the coroner, to whom an execution was delivered, made return thereon that

he had made the moneys, and that the debt and costs were satisfied, annexing to his return as a part thereof a receipt from the plaintiff to him in full of all the money due on the execution.

The plaintiff, to sustain the issue on his part, was permitted to show by the coroner that no money was paid by the debtor to the plaintiff or to himself, nor any paid by him to the plaintiff, but that an arrangement was entered into whereby Blackman, the debtor sheriff, having in his hands an execution against plaintiff's agent, agreed with the plaintiff to pay for him a sum equal to that due on the plaintiff's execution against him, Blackman; and thereupon receipts were exchanged and the plaintiff directed the coroner to return his execution satisfied, and this was done.

The court held the judgment sought to be revived by the *scire facias* to be in law satisfied, and RUFFIN, C. J., says:

"If the plaintiff had acknowledged satisfaction of record, the judgment would be thereby discharged. This is the same thing.

Writs of execution, when returned are, *together with the returns, part of the record in this state. Piggott* v. *Davis,* 3 Hawks, 25. The return of satisfaction by the sheriff, it was said in *Governor* v. *Twitty,* 1 Dev., 153, *is conclusive,* and while it stands the plaintiff has no remedy against the defendant. The agreement of a sheriff to return an execution satisfied, without receiving the money, does not bind the plaintiff, but his return that he has levied the moneys does; for after that, no other execution can issue until there is further adjudication by the court."

After saying that the return is conclusive and cannot be collaterally impeached, he adds: "The only manner in which the plaintiff could get clear of it, is by a motion to amend the return of the coroner, which would be heard like a motion to vacate an acknowledgment of satisfaction of record by the party."

The rule is reiterated by GASTON, J., in *Poor* v. *Deaver,* 1 Ired., 391, and he says that, "after the return of satisfaction upon the first execution the judgment theretofore rendered was *extinguished,* and until that return was set aside or corrected,

and a further judgment, or order of the court in nature of a further judgment was rendered, there was nothing of record to warrant further proceedings against the debtor or his property."

In *Edwards* v. *Tipton*, 77 N. C., 222, RODMAN, J., draws a distinction between the evidence furnished in the recitals of a sheriff's deed for land and his return upon the writ, and says: "The latter rests on the officer's personal knowledge and is done in performance of a sworn duty," adding, "for these reasons a return is *prima facie* evidence of what it states, and *cannot be collaterally* impeached, · although it may be corrected, so as to speak the truth, on application to the court in which it is."

It is declared again in *Piggot* v. *Davis*, 3 Hawks, 25, cited in *Snead* v. *Rhodes, supra,* that *where an execution is returned, it becomes part of the record of the suit.*"

On the other hand, it was declared by DANIEL, J., in *Smith* v. *Low*, 5 Ired., 197, that "the records of a court, professing to state the judicial transactions of the court itself, cannot be contradicted by parol evidence, or any other proof, for they import verity in themselves. But the acts and doings out of court of a ministerial officer, as the clerk issuing writs, constables and sheriffs in making returns on warrants, writs, &c., although required by law to be returned into a court of record, are only *prima facie* to be taken as true, and are not conclusive evidence of the things they write. They may be contradicted by any evidence, and shown to be false, antedated, &c.

This was said in reference to the introduction of evidence by the defendant, in an action for the recovery of land, who claimed under the deed of the person whose land had been sold under execution to the lessor of the plaintiff, the object of which evidence was to prove that the levy had been antedated in order to overreach the conveyance to the defendant. The defendant was a stranger to that proceeding and asserted a title, which but for the false dating would be the *superior title.*

In *Patterson* v. *Britt*, 11 Ired., 383, where the preceding language of DANIEL, J., was recited and approved by PEARSON,

J., the controversy was as to the day on which the attachment was levied on the plaintiff's goods, and whether the officer Exum acted in his capacity of constable or deputy of the sheriff in making the seizure. The officer in his return stated the seizure to have been made on July 29th, when he had valid process, while witnesses stated, some of them, that it was on that day, others, that it was on the day previous.

The original return was made by the defendant Exum, as constable, and he obtained leave to amend and make his return in the name of the sheriff by himself as deputy, in order to give validity to his act, and also to involve the sheriff in a responsibility incurred. Until the amendment to the return, he was a stranger to the proceeding, and ought not to be estopped from showing the fact by means of the conclusive effect ascribed to an official return.

In the case of *Bland* v: *Whitfield*, 1 Jones, 122, the defendant exposed for sale, and struck off to the highest bidder, shingles and timber belonging to the plaintiff, but never disturbed the possession, and produced a writ of execution from a justice conferring authority to take the property, on which was endorsed a levy. It was decided that the "*levy*" did not *per se* imply the commission of an actionable trespass, and was *prima facie* evidence in the proceeding of which it forms a part.

These are the most direct and appropriate adjudications upon the matter in controversy, to which we have been directed, and it is somewhat remarkable that no incongruity is noticed among them by the judges who deliver the later opinions. The inference to be drawn from this silence is that the later were not intended to overrule or modify the earlier adjudications, and that they are capable of being reconciled upon some common basis.

The principle so emphatically declared in the former is that the return of satisfaction, in whole or in part, of the execution in direct response to the mandate, and so entered of record, operates directly upon the debt itself; and as it deprives the

plaintiff of making the sums, so returned as paid, out of the debtor, it imposes an obligation on the officer to account therefor, which he cannot remove by showing his return to be untrue. While it stands the return cannot be contradicted; and if erroneous, his relief must be found in having a correction made, and the return stricken out or amended so as to conform to the facts.

On the other hand, the recitals in the return of what was done by the officer in order to raise the money—matters *in pais* —incidental to his action, but not of the essence of his answer to the mandate of the writ, were open to explanation or to disproof—perhaps from the parties to the action, and certainly so from strangers.

This distinction seems to be recognized in the cases cited, and also in *Simpson* v. *Hiatt*, 13 Ired., 470, and *Hardin* v. *Cheek*, 3 Jones, 135, where in both cases it is held that a party claiming title under an independent conveyance, and not privy to the action in which the return was made, may impeach the recitals of these outside acts of the officer. But we find none which permit contradiction of the return, which appropriates money in payment, by the parties to the suit—and still less by the officer who makes it. As to him it is conclusive and imposes an obligation which the sureties also assume.

It would be a singular result that the return of money collected should be allowed to extinguish the debt recovered, *pro tanto*, and debar the collection of so much of it from the debtor, and yet the sheriff escape responsibility by showing the falsity of his own return, when redress is sought from him.

We must, therefore, adhere to the rule, for its own intrinsic reasonableness, as well as upon the authority of the eminent judges who prescribed it, that the return of money collected on the writ, or so returned by the officer, while it remains, acts upon and reduces the debt, and the officer cannot be heard to deny or contradict it.

For these reasons we must sustain the plaintiff's exception, and reverse the ruling of the court below, and the plaintiff will have judgment here.

Error.                                                    Reversed.