PER CURIAM. No Error.

_____

S. B. LUTTRELL & CO. v. JOHN L. MARTIN AND THE PIEDMONT LUMBER, RANCH AND MINING CO.

*Attachment — Affidavit—Summons—Amendment of Return— Corporations—Powers of Agents of Corporations—Issues.*

1. Although an appeal from the refusal of a motion to dismiss an action is premature, the exception, having been noted, will be reviewed on appeal from the final judgment.

2. Where a summons was properly served and the Sheriff's return was unsigned, though indorsed in proper form, the Judge at the trial did not exceed his powers in permitting the Sheriff to sign the return *nunc pro tunc.*

3. To obtain an attachment it is not necessary that the affidavit shall state that the defendant "cannot, after due diligence, be found within this State." Such averment is necessary, however, in an affidavit to procure publication of summons.

4. Where the issues submitted by the Court were substantially the same as those offered by a party on the trial, it was not error to refuse to submit the latter.

5. Where a contract of a corporation, not in writing, has been executed and is not executory, it is not invalid under section 683 of *The Code*.

6. Where, in an action begun by summons returnable to Fall Term, 1891, of a Superior Court, at which term the complaint was filed, and an *alias* summons returnable to Spring Term, 1892, was served in due time on one of the defendants, such defendant was properly ruled to answer at that term.

7. Where a motion to dismiss an ancillary remedy, as an attachment, is improperly refused, it will not affect the validity of a trial and judgment on the merits.

8. Although a corporation not authorized to build and operate a railroad would be acting *ultra vires* to engage in such business, yet it may render itself liable for "railroad supplies" purchased and used by it, especially where the articles bought were not such that the seller would have notice that the corporation would not have need of them in its business and where the seller had no notice that the goods were to be used for any other purpose than the regular business of the company.

9. A general agent of a corporation may delegate to another authority to buy supplies for the corporation.

10. Prayers for instructions to the jury, although in writing, not made at or before the close of the evidence, but after argument was begun on the trial, were not in apt time, and it was not error to refuse them.

11. Where the jury found an issue and then separated, and the Judge found as a fact that they had not been influenced by what had been said to them after their separation, it was not error to permit them to re-assemble and put their finding in writing.

12. Recitals of fact set out by an appellant as grounds for his motion for a new trial will not be considered when they neither appear in the record nor are found as facts by the Judge.

CIVIL ACTION, tried at Spring Term, 1893, of BURKE Superior Court, before *McIver*, J., and a jury.

The action was commenced on the 8th day of June, 1891, by the issuance of a summons, and on the same day, upon affidavit made prior to the commencement of the action

by S. B. Luttrell, the plaintiffs obtained an order for the publication of the summons.

On the 26th day of December, 1891, a second order of publication was issued upon the affidavit of S. B. Luttrell, one of the plaintiffs, and on the 28th day of December, 1891, a second summons was issued.

At Fall Term, 1891, plaintiffs filed their complaint, alleging that the defendants are indebted to them in the sum of $1,450.05 for goods, wares and merchandise, consisting of powder, dynamite, etc., sold and delivered to the defendants.

At Spring Term, 1892, the defendants put in a special appearance, and moved the Court to declare that there had been no service of summons on them, and that they were not required to answer at that term for the following reasons:

1. That the return which appears on the summons, returnable to this term, has not been signed by the Sheriff; that is to say, there is no return of service of said summons on either of the defendants.

2. That it appears from the notice of publication attempted to be made in this action that the said action is brought for the purpose of collecting an open account, and the property of defendants has not been brought under the control of the Court by attachment or otherwise.

The following unsigned return appeared upon the back of the summons:

"Received December 29, 1891. Served February 23, 1892, on Robert T. Claywell, agent for the Piedmont Lumber, Ranch and Mining Company. John L. Martin not found in county."

It was admitted that the summons had been served on R. T. Claywell, agent of Piedmont Lumber, Ranch and Mining Company. On motion of plaintiffs, his Honor Judge Graves permitted the Sheriff in open court to sign

the said return by signing his name as follows: "Thos. M. Webb, Sheriff."

It appears that no attachment had been issued in this action, but publication had been made for six successive weeks in the *Morganton Herald*, a newspaper published in Burke county, in obedience to the order of the Clerk, based on the affidavit of plaintiff S. B. Luttrell.

It was admitted that no attachment had been issued, and that the defendant John L. Martin had not been personally served with summons, there being no service as to him, except and unless by publication as herein stated.

His Honor Judge Graves overruled the motions of the defendants, and held that the defendants were properly before the Court and required to answer. The defendants excepted to the rulings of his Honor, and appealed to the Supreme Court. *Luttrell* v. *Martin*, 111 N. C., 528.

The defendants, under the order of his Honor requiring them to answer, answered that the goods mentioned in the complaint were bought by John L. Martin, not as an officer of the Piedmont Lumber, Ranch and Mining Company, but as the secretary and treasurer of the North and South Improvement Company, which was at that time engaged in building and constructing a railroad known as the Southern and Western Air Line.

That the defendant Piedmont Lumber, Ranch and Mining Company was not authorized by its charter to engage in the work of building a railroad.

That the purchase of said goods was unauthorized and illegal, and not binding on the company.

That the alleged contract, being in excess of $100 and not in writing, is void under section 683 of *The Code.*

On the 1st day of February, 1893, on affidavit of S. B. Luttrell, alleging that John L. Martin is a non-resident, and that Piedmont Lumber, Ranch and Mining Company

is disposing of the goods purchased of the plaintiffs with intent of defrauding and evading the payment of its indebtedness, a warrant of attachment was issued returnable to second Monday after the first Monday in March, 1893, and notice of publication ordered to be made against said defendants.

At Spring Term, 1893, defendants again renewed their motion made before his Honor Judge Graves, and also moved to dissolve the attachment, which motions were denied by the Court.

On the trial the defendants tendered the following issues, which the Court refused to submit, and the defendant corporation excepted:

1. Were the goods purchased for the purpose of being used in the construction of a railroad?

2. Was the purchase of said goods outside the scope of the agency of John L. Martin?

3. Were said goods ever delivered to the Piedmont Lumber, Ranch and Mining Company?

The Court submitted the following issues:

1. Were the goods purchased for the purpose of being used in the construction of a railroad; and, if so, did plaintiffs know of such purchase at time of purchase?

2. Were said goods ever delivered to the Piedmont Lumber, Ranch and Mining Company?

3. Are the defendants indebted to the plaintiffs, as alleged in the complaint?

J. W. Wilson, as witness on behalf of the plaintiffs, testified as follows: " I know defendant John L. Martin; he was the general agent and the only agent of the defendant corporation in this State, and I think the only agent the Piedmont Lumber, Ranch and Mining Company had in this State.   Mr. Martin was one of the corporators of the company, and all of the others, Cheever and Burke, live in New

York. The defendant corporation was engaged in mining, raising stock, buying timber, etc., Mr. Martin having these matters in charge for them."

Here counsel for plaintiffs asked witness if he bought the goods described in the complaint for defendants. This was objected to by the defendant corporation, first, as outside of the scope of Martin's agency; second, on the ground that he could not delegate his authority; third, *ultra vires*.

The objection was overruled by the Court, and the defendant corporation excepted.

The witness answered: "I did not buy the goods. Mr. Martin, as the agent of the defendant corporation, asked me to order the goods of the plaintiffs for that company, and I did order them for the company, at Mr. Martin's request of the plaintiffs; the goods were shipped by the plaintiffs, but I do not know to whom they were shipped; they were shipped as ordered by Mr. Martin, and as I instructed them. I know the handwriting of John L. Martin, and these three letters are signed by him."

Here the plaintiffs offered in evidence the said three letters, which were as follows:

" NEW YORK, November 20, 1889.

"S. B. LUTTRELL & Co., *Knoxville, Tenn.*

"GENTLEMEN:—I have returned from Europe, and found your various letters, statements and check you returned to me. I am sorry that the account as rendered to you was not satisfactory. We have no desire to do anything except what is perfectly fair in every way. I will state, however, that I thought I was doing right when I sent you the check.

I will begin building again and using the powder in the next few months, being about to complete satisfactory financial arrangements for the railroad. I would ask you to leave the powder there where it is kept safely, and we

will pay for it as we use it within the next few months.   I
do not want to pay for it all now.   Major Wilson will tell
you that I am perfectly responsible for the bill, and would
like to know the least sum in cash that you will take now
to carry the account for a few months longer.   Write me
fully about this and I will reply promptly.   I have con-
sulted with Colonel Tate, of Morganton, N. C., of whom
you probably know by reputation, in regard to this matter,
and he will give you further information about me if you
desire it.                Very respectfully,

                          "JOHN L. MARTIN,
                "*Treas. Piedmont Lumber, Ranch and Mining Co.*"


                                "JANUARY 14, 1890.

"S. B. LUTTRELL & Co., *Knoxville, Tenn.*

   "GENTLEMEN:—I have received your various bills, and
the only reason for the delay in my not answering them
was the death of my brother and my own protracted illness
from the prevailing '*la grippe.*'   I now enclose check for
$250, and will send you $250 more on February 20, and
will pay you for the balance of the powder as promptly as
possible.   Thanking you for all your courtesy and patience
in this matter, and assuring you that I will reciprocate at
the earliest opportunity in the future, I am,

       "Yours very truly,      JOHN L. MARTIN,
                                      "*Treasurer.*"


                "JOHN L. MARTIN, *Trustee,*
                   "*Room 32, 15 Park Row,*
                   "NEW YORK, May 23, 1890.

"S. B. LUTTRELL, ESQ., *Knoxville, Tenn.*

   "DEAR SIR:—I was away when your draft for $500 came
in, and I have just received your telegram of May 20.   I
start for Europe to-morrow to sell my bonds, and expect to

begin work actively on my road in sixty days, when I will make you a substantial payment on the powder. You are perfectly justified in charging me interest on this at eight per cent., which you can add on to the price in final settlement. Thanking you again for your many courtesies in this matter, I am,        Yours very truly,

"JOHN L. MARTIN."

To the introduction of the foregoing letters in evidence the defendant corporation objected on the ground that said letters do not purport to bind the defendant corporation. Objection overruled, and defendant excepted.

The witness further testified that the goods were bought in 1888 and 1889; that the goods were used in building the Southern and Western Air Line Railroad; that those goods which were not used on said railroad were long afterwards hauled away from the railroad works by witness's teams and turned over to Gillam & Connelly, to be sold, and the proceeds of sale held by them to await the result of this case; that John L. Martin was an officer of the Southern and Western Air Line Railroad; don't know to whom the goods were delivered, and don't know whether they were delivered to defendant corporation, but they were shipped as ordered.

It was admitted that the purposes for which defendant corporation was organized are fully stated in its charter, which is made a part of its answer, fully set out in the record.

Upon the close of plaintiffs' evidence, which was but the examination of one witness (J. W. Wilson), plaintiffs rested their case, and the defendant corporation introduced no witnesses. Immediately counsel for plaintiffs began to address the jury, and while the defendant's counsel was making the concluding speech to the jury, and near the

close of the same, requests for instructions were made in behalf of defendant, and handed to the Court.

The Court held that the request for these charges not having been made in apt time, the requests came too late, and refused to consider them, and the defendant excepted.

The defendant's counsel stated that they could not resist a verdict as to the defendant Martin.

The Court charged the jury, among other things, that a delivery to John L. Martin as the agent of the defendant corporation would be a delivery to the corporation.

To which charge the defendant corporation excepted, on the ground that the purchase of said goods was unauthorized by its charter, and was therefore outside of the scope of the agency of John L. Martin. Defendant further excepted to the charge in that his Honor failed to instruct the jury that there was not sufficient evidence to charge the defendant corporation with liability in the purchase of said goods.

The jury, in response to the issues submitted, found, in response to the first issue, "No," and in response to the second issue, "Yes," and did not answer the third issue. The verdict was, by consent, received by the Clerk after the adjournment recess of Court late in the evening of March 24th for the day and recorded by the Clerk as rendered.

On the next morning, when the Court assembled pursuant to adjournment, his Honor being informed that the jury had failed to answer the third issue by reason of a misunderstanding, allowed the jury to be recalled (after they had separated) under objection by counsel for defendant corporation. The jury stated to his Honor that they had understood that it was not necessary for them to answer the third issue. Counsel for defendant corporation obtained leave to examine the jury, when it appeared as follows:

The juror Patton stated that he had talked to the witness Wilson, who remarked to him that we (the jury) did right, and that they wouldn't let him tell all that he knew; he said how he went to Luttrell for Mr. Martin, and said that they asked him if company was responsible; that he stated that it was the Cheever Company, and was reponsible.

The juror Kincaid stated: "He talked to plaintiffs' counsel; asked him what he thought about it; did we do right? He said the verdict was all right; talked to Silver, who stated he did not know how we arrived at conclusion. I thought it was used for building a railroad; bought for that purpose."

The juror Hallyburton stated: "He talked to Lackey; told him how we found. We talked about it; he said what Martin did, did so individually; that Martin was to use $1,500 per month."

The juror Galloway stated: "Talked to Happoldt, who intimated that we had not found right verdict. I then went home."

The juror Orders stated: "Talked to Happoldt, who said verdict not right; said Martin was wishy-washy; he wouldn't render the verdict we did."

The juror Benfield stated: "Talked to Haskins, who said verdict was right."

The juror Pool stated: "He talked to Avery."

The jurors Hinson and Deal did not talk to any one.

The juror Patton again stated that he talked to Lail about the verdict.

The defendants' counsel objected, stating that the jury had separated the evening before, after returning their verdict, and it was now too late. His Honor inquired of the jury whether they had agreed upon an answer to the third issue before separating in the evening, and all being present they answered that they had agreed, but had not written the answer to this issue because they thought it unnecessary.

These statements were made by the jury in response to questions from his Honor and from the defendant's counsel.

The defendants' counsel moved for a new trial on the ground that the jury had found the first issue directly in the face of the uncontradicted evidence in regard to the goods being bought to be used in the construction of a railroad.

The plaintiffs' counsel stated that it was not denied that it was bought for this purpose, but that the plaintiffs were not aware of it at the time, and that he was willing to have it corrected in this particular, as he was sure this was what the jury intended by their answer, provided that defendant's counsel would agree for the jury to answer the third issue, which defendants refused.

The Court found, as a fact, that according to the statement of the jury they had not been influenced by anything said to them after they had separated.

Thereupon his Honor told the jury to retire and answer the third issue.

Thereupon the jury retired, and the defendant corporation excepted to the ruling of the Court in permitting them to consider further of their verdict, or to retire and answer the third issue after having separated.

The jury found, in response to the first issue, "The goods were purchased for constructing a railroad, but plaintiffs did not know it."

The response to the second issue was not changed, and in response to the third issue the jury answered, "Yes."

To all of which the defendant corporation excepted.

And thereupon, in apt time, the defendant corporation entered its motion that the verdict be set aside, and for a new trial, which motion was denied, and the defendant corporation excepted.

And thereupon judgment was rendered by the Court in

favor of the plaintiffs upon the verdict. The defendants thereupon again called up their motion to vacate and dissolve the attachment, which the Court disallowed. Defendant corporation appealed.

*Mr. S. J. Ervin,* for plaintiffs.
*Messrs. M. Silver* and *I. T Avery,* for defendant (appellant).

CLARK, J.: The appeal from the refusal to dismiss the action was held premature in this case, 111 N. C., 528. But the exception having been noted, now comes up for review without prejudice on this appeal from the final judgment. *Guilford County* v. *Georgia Co.,* 109 N. C., 310.

It was admitted that the summons had been served on the agent of the defendant corporation February 23, 1892, but the return of the Sheriff was unsigned, though indorsed in proper form on the summons. The Judge did not exceed his powers, but exercised them properly in permitting the Sheriff to sign the return *nunc pro tunc. Clark* v. *Hellen,* 23 N. C., 421; *Henderson* v. *Graham,* 84 N. C., 496; *Walters* v. *Moore,* 90 N. C., 41; *Williams* v. *Weaver,* 101 N. C., 1. Indeed, the Sheriff had of right till the first day of that term to make the return. *The Code,* §200. So far as the attachment is considered as the basis of a publication to bring the defendants into court, it is unnecessary to consider whether it was regularly sued out or not, as to the defendant corporation, since the summons was served on its agent. *The Code,* §217 (1). Nor as to the defendant Martin, for he submitted to the verdict and judgment and has not appealed.

The affidavit to procure publication of summons must contain an averment that the defendant "cannot, after due diligence, be found within this State." *The Code,* §218.

But this is not required for an attachment. *The Code*, §349. It is because attachments are rarely issued, except against non-residents, for whom publication must be made, that the two requirements are often confused. It is not requisite, and therefore need not be averred, that the defendant cannot be found in the State in order to procure a warrant of attachment. The head-note in *Sheldon* v. *Kivett*, 110 N. C., 408, is misleading. It was the order of publication which was there amended. In fact, in some instances, as in the present, an attachment may issue against a resident of the State or a domestic corporation. Even had the motion to dismiss the attachment been improperly refused in this case, merely the judgment in that respect would have been modified. Being an ancillary remedy, this would not have affected the regularity of the proceedings and verdict, nor of the judgment in other respects.

The issues tendered by the defendants were preferable to those actually submitted, but the defendants suffered no prejudice, as every phase of their case could have been and was submitted to the jury. *Humphrey* v. *Church*, 109 N. C., 132, and cases there cited.

The defence set up in the answer that the contract was invalid as to defendant corporation, under *The Code*, §683, because not in writing, is not good, because it is an executed and not an executory contract. *Curtis* v. *Piedmont*, 109 N. C., 401; *Roberts* v. *Wood-working Co.*, 111 N. C., 432. This section (683) was repealed by the Legislature of 1893.

As to this appellant, certainly the Judge properly held that the cause stood for trial at Spring Term, 1893. The other defendant is not complaining. This defendant was not a non-resident, but a domestic corporation, and the affidavit for publication, February 1, 1893, against the other defendant, Martin, by the recital therein that there was then no agent of the appellant corporation in this State,

does not annul the Sheriff's return, and the admission of service upon the agent of such corporation nearly a year before, on February 23, 1892.

The principal contention on the merits is that the defendant corporation did not buy the goods, but that they were bought by Martin for a railroad company; and further, if bought for this company it was not bound, because the goods were railroad supplies, and this company could not act *ultra vires*. As to the first proposition, the jury found the fact that the goods were bought by and delivered to the defendant corporation. As to the second proposition, the company would certainly have been acting *ultra vires* had it attempted to build or operate a railroad, but it by no means follows that it would not be liable for railroad supplies if purchased or used by it. It would scarcely be absolved from liability for goods actually bought by it on the ground that it did not need them. But we need not decide this point, for the goods in question—powder, dynamite, etc.—were not such articles that the seller would have notice that the defendant "Lumber, Ranch and Mining Company" would not have need of them in its business. In fact, it might reasonably be supposed that these articles were to be used in mining, and the jury find as a fact that the plaintiffs had no notice that the goods were to be used for any other purpose.

Mr. Wilson was properly allowed to testify that by authority of the treasurer and general agent of the defendant company he bought these goods of the plaintiff for said company. It is not a forbidden delegation of authority, but frequently a necessary exercise of it, when the chief officer of a corporation purchases articles for his company through an agent. The letters of the said treasurer, written subsequently, were competent evidence to corroborate the witness. This is not the case of an attempt to prove an agency by subsequent admissions of an officer. Here there

was direct testimony by Wilson of his purchase of the goods for the defendant company by authority of its treasurer and general manager, and the subsequent correspondence of that officer with the plaintiffs, signing himself treasurer of such company, acknowledging the receipt of goods, paying for same in part and asking time for further payment, was corroborative as ratification of the action of the purchasing agent. The last letter of the three in evidence was not signed by him as treasurer, but probably was competent in connection with the other two. At any rate, the exception being a general one as to all three letters, cannot be sustained as to one only. *Smiley* v. *Pearce*, 98 N. C., 185.

The prayers for instruction, though in writing, were not asked at the close of the evidence, but much later, and were not in apt time, and cannot be considered. *Grubbs* v. *Insurance Co.*, 108 N. C., 472; *Taylor* v. *Plummer*, 105 N. C., 56; *Posey* v. *Patton*, 109 N. C., 455; *Merrill* v. *Whitmire*, 110 N. C., 367.

The exception that there was no evidence sufficient to go to the jury cannot be sustained. There was the testimony of Wilson that he bought the goods for the defendant company, and the letter from the treasurer of the same afterwards enclosing part payment and asking time on the balance.

The jury having found the third issue before their separation, it was no error to permit them to assemble again and write it down, especially as the Judge finds as a fact that the jury had not been influenced by what had been said to them after their separation. *Petty* v. *Rousseau*, 94 N. C., 355; *State* v. *Shelly*, 98 N. C., 673. Indeed, it was, if error, immaterial error, for the response to the third issue was a mere legal sequence, upon the pleadings and admissions, to the findings upon the first and second issues. The jury were right in deeming no response thereto necessary, for

the answer admitted the purchase of the goods averred in the complaint by Martin, and merely alleged that they were bought by him for another company and not for the defendant corporation.

The amendment to the response to the first issue could not prejudice the appellant. It is in no worse condition in any respect than if the answer to that issue had stood as first made.

Some of the recitals of fact set out by the appellant as his grounds for the motion for a new trial neither appear in the record nor are found as facts by the Judge, and of course we cannot consider them.

No Error.