## STATE v. JIM LEWIS.

(Filed 26 February, 1919.)

**1. Court's Discretion— Rape— Jurors— Special Venire— Writs— Entries— Orders—Nunc Pro Tunc—Appeal and Error.**

Where the trial of a capital felony has been proceeded with, and the accused has not exhausted his peremptory challenges, it is within the discretion of the trial judge, not reviewable on appeal, in the absence of gross abuse or corruption in drawing and summoning the jurors, to correct an omission by the clerk to issue the writ for the special venire and to enter the order for it upon the minutes of the court by directing the omitted acts to be done by the clerk *nunc pro tunc* and the sheriff to make the proper return upon the writ.

**2. Evidence—Contradiction—Rape—Trials.**

Where the prisoner and his witnesses have testified, for the purpose of proving an alibi, that he was sick in bed for a period of time extending over two weeks, including the day on which the rape was committed, for which he was being tried, it is competent, in order to contradict these statements, for the State to show that during that time he was several times seen apparently well and going about at other places.

INDICTMENT tried before *Daniels, J.*, and a jury at November Term, 1918, of WAYNE.

The prisoner was charged with rape, committed on the person of Mrs. Sarah King, on 17 January, 1918. The prosecutrix testified that she was alone in the field picking cotton, about 5 o'clock in the afternoon, when the defendant approached her from the negro cemetery and asked her what she received for picking cotton, and then if the butcher wagon had passed by. He walked along the cotton row behind her, and when she reached the end of the row he seized her and threw her down to the ground, and had connection with her, by force and against her will. She cried out and he choked her. When he left, after being there a half hour, he went towards the branch. She met Mr. Jones on her way to her home and told him about it, and he went back with her to the place. She described minutely how the prisoner was dressed at the time, and stated that he had a gap in his teeth. She identified the prisoner as the man who assaulted her in the field, and expressed herself as being positive and sure that he is the man. She was corroborated

by Mr. Jones, who testified that he went to the field with Mrs. King and saw the place where, as she alleged, the act was committed, and it appeared as though there had been a struggle there. He further stated that there were bruises on Mrs. King's throat, and she was crying when he met her in the road. He accompanied her to her home and reported the facts to Mr. Fulghum, the constable, who also went to the place where Mrs. King was assaulted, and testified that there were indications of a struggle on the ground; that he went to the prisoner's home and found him in bed, and he said that he was sick, and was sick and in bed on 17 January, 1918, and had been sick ever since.

The defendant's witnesses testified that the prisoner was sick and in bed on 17 January, 1918, and for a week before and for a week after that day.

The State, in rebuttal, offered evidence tending to show that the prisoner had been seen by them, not in Goldsboro, where he was found by the constable, when he said that he was sick, and was then in bed, but in the country some two or three miles from Goldsboro, within the week before and the week after 17 January, 1918, and that he had chased Mrs. Loftin, and tried to grab her, and returned three nights afterwards and peeped in the window of her house. This evidence was admitted over the prisoner's objection, but was confined by the court strictly to its effect as contradicting the prisoner's declarations and the testimony of his witnesses as to his whereabouts at the time mentioned, though there was evidence that he ran when he saw one of the witnesses a few days after the alleged assault. None of this evidence was permitted to be used as substantive but only as tending to contradict the defendant's witnesses and his own statements.

A special venire of 40 jurors was ordered by the court, but the writ was not drawn out in writing and delivered to the sheriff at the time. When the case was again called for trial only twenty-two of this panel answered to their names, and five of these were excused, leaving seventeen for service. This number was exhausted and another order made for twenty special jurors, and there was a third order made for ten jurors, and the sheriff summoned the members of a jury which had just rendered their verdict in another case and were dismissed until a later day in the term. A jury was finally selected, without the prisoner having exhausted his peremptory challenges, he having made use of only nine of them. When it was discovered that no formal writ had been issued for the forty jurors the court, on motion, ordered the writ to issue nunc pro tunc, and the sheriff to make his return thereon, which was done, he stating that he could only find twenty-two of the forty summoned after proper search for them. These proceedings of the court were all duly and severally objected to by the prisoner, and his

STATE *v.* LEWIS.

objections were overruled, and they are now assigned as error.
He was convicted, sentenced to death, and appealed.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*
*W. F. Tayloe and J. Faison Thompson for defendant.*

WALKER, J., after stating the case: We have no doubt as to the power of the court to amend its record by inserting the order for the summoning of the special venire, and the issuing of the writ to the sheriff, and the entering of his return upon the process *nunc pro tunc.* The order for these amendments and the correction of what was overlooked by the officers, that is, the clerk and the sheriff, related back to the time when the order or writ should have been issued by the clerk, and the return made thereon by the sheriff. When the court has the power we do not review its exercise, as it is within the discretion of the court to decide whether it will exercise it or not. There are a vast number of authorities for this position, and there is nothing better settled by our cases than this rule. *Phillipse v. Higdon,* 44 N. C., 381; *Clark v. Hellen,* 23 N. C., 421 (approved in *Henderson v. Graham,* 84 N. C., 496); *Seawell v. Bank,* 14 N. C., 279; *Cheatham v. Crews,* 81 N. C., 343; *S. v. Cauble,* 70 N. C., 62; *Bullard v. Johnson,* 65 N. C., 436; *Williams v. Weaver,* 101 N. C., 1; *Lutterell v. Martin,* 112 N. C., 593; *Grady v. R. R.,* 116 N. C., 952. There are many other cases more or less analogous to this one.

In *S. v. Cauble, supra,* this Court held that the Superior Court had the power to amend the warrant by striking out the name of the prosecutor as plaintiff, it then having the form of a civil action, and inserting the name of the State, *Justice Bynum* saying: "The power of the court to make any amendment in furtherance of justice is ample. C. C. P., sec. 132. The change did not affect the defense or take the defendant at a disadvantage, and he therefore has no cause of complaint." It was held in *Clark v. Hellen, supra,* and *Chief Justice Smith* stated in *Henderson v. Graham, supra,* approving *Clark v. Hellen:* "Amendments of process are not admissible when the effect will be to prejudice acquired interests or take away any defense which could be made to an action begun at the time of the amendments. *Phillips v. Holland,* 78 N. C., 31. The power has been exercised in numerous cases in this State and precedents established for the present application. Thus it is held that a seal may be affixed to a writ issued to another county after its return, and the process, void without seal, thus rendered effectual. *Clark v. Hellen,* 23 N. C., 421. And this may be done to a *fieri facias* under which the defendant's land has been sold, for the purpose

·of perfecting the purchaser's title. The extent to which the power of amendment has been carried will appear in the numerous cases which have come before this Court, and to which it is needless to refer in ·detail. Some of them are cited in *Cheatham v. Crews,* 81 N. C., 343," citing *Purcell v. McFarland,* 23 N. C., 34; *Seawell v. Bank,* 14 N. C., ·279. The power of the court to require the officers to do what *it had ordered to be done* is fully discussed in the very recent case of *Mann v. Mann,* 176 N. C., 353.

We therefore conclude that the court, in the exercise of its discretion, ·could amend the proceedings and allow the clerk to issue the writ and the sheriff to make a proper return *nunc pro tunc. S. v. Whitt,* 113 N. C., 716; *Lutrell v. Martin,* 112 N. C., 593; *Grady v. R. R.,* 116 N. C., ·952. An officer may be allowed to amend his return of process so as to make it speak the truth, even though the amendments defeats the plaintiff's recovery of a penalty for a false return. *Stealman v. Greenwood,* 113 N. C., 355; *Swain v. Burden,* 124 N. C., 16; *Swain v. Phelps,* 125 N. C., 41. The judge's finding of facts shows that the omission here was purely clerical, and could in no way affect any substantial right, so to cure it was plainly within his discretion. There seems to have been no other irregularity alleged in the further proceeding to .secure a jury, and if there was, it could not, in the absence of fraud or ·corruption, affect the rights of defendant. *S. v. Speaks,* 94 N. C., 865; *S. v. Hensley, ibid.,* 1021; *S. v. Whitson,* 111 N. C., 695; *S. v. Brogden,* 111 N. C., 656; *S. v. Whitt, supra; S. v. Parker,* 132 N. C., 1014.

In this record it appears that the court had ordered the sheriff to summon the venire of forty men, and it was the plain duty of the clerk · to enter this order in the minutes, and of the sheriff to obey it. If the clerk failed to do so, by inadvertence, the court could, at any time, require him to supply the omission and to issue the writ, so that the sheriff could make his return. The jurors, who were named in the · ·verbal order, were actually notified to appear at the court, so far as they could be found, and it amounted to nothing more than committing to writing that which was ordered to be done. How it could prejudice the prisoner in any way or in the least degree we fail to see. This .assignment of error, therefore, is unavailing.

The evidence admitted by the court was manifestly competent for the single purpose of contradicting the prisoner's statement and the testimony of his witnesses that he was sick for two weeks, including 17 January, 1918, as one of the days, and it was thus restricted by the judge. This assignment also must be disallowed.

The other exceptions are merely formal.

There was sufficient evidence, in law, to support the verdict.

It must, therefore, be certified that there is no error in the case or record.