STATE *v.* BRUNSON; STATE *v.* KING; STATE *v.* JONES; STATE *v.* JAMES; STATE *v.* WATKINS.

No. 724—STATE v. JOHN HENRY BRUNSON.

No. 725—STATE v. ESSIE KING.

No. 726—STATE v. MARTHA JONES.

No. 727—STATE v. LOUISE JAMES ET AL.

No. 728—STATE v. LIDA MAE WATKINS ET AL.

(Filed 28 April, 1948.)

**Appeal and Error § 51c: Criminal Law § 85a: Jury § 8—**

In these cases involving exceptions to the overruling of motions to quash the warrants and to denial of challenge to the array, the judgment of the Supreme Court of North Carolina was reversed by the Supreme Court of the United States in memorandum decision citing authorities dealing with the administrative practices in the selection of juries. *Held:* The mandate of the Supreme Court of the United States does not require the quashal of the warrants nor adjudicate that the North Carolina statutes on the subject of jurors are invalid.

ON mandates from Supreme Court of the United States.

Criminal prosecutions on separate warrants charging the defendants with malicious injury to property, assaults, disorderly conduct and disturbing the peace, tried originally in the Municipal Court of the City of Winston-Salem and again on appeal at the November Term, 1946, Forsyth Superior Court. Verdict of guilty, judgment and appeal in each case.

The leading case, No. 723, *S. v. Koritz et al.,* involving kindred offenses (resisting and obstructing officer), proceeded in like manner at the October Term, 1946, Forsyth Superior Court, and on appeal here was regarded as controlling and determinative of the others. It was the only case argued before us. The others, the ones now involved, were made to rest on the opinion filed in that case, which was based on similar findings of fact and determinations of the trial court. See 227 N. C., 552-561.

In the principal case, the *Koritz case,* application for writ of *certiorari* was made to the Supreme Court of the United States on 31 July, and denied 13 October, 1947; while in these five companion cases, application

for *certiorari* was made to the Supreme Court of the United States on 23 August and granted 15 December, 1947.

Thereafter, on 15 March, 1948, the Supreme Court of the United States filed the following memorandum in the cases:

"*Per Curiam:* Reversed. *Strauder v. West Virginia,* 100 U. S., 303; *Ex parte Virginia,* 100 U. S., 339; *Neal v. Delaware,* 103 U. S., 370; *Carter v. Texas,* 177 U. S., 442; *Rogers v. Alabama,* 192 U. S., 226; *Norris v. Alabama,* 294 U. S., 587; *Hollins v. Oklahoma,* 295 U. S., 394; *Hale v. Kentucky,* 303 U. S., 613; *Pierre v. Louisiana,* 306 U. S., 354; *Smith v. Texas,* 311 U. S., 128; *Hill v. Texas,* 316 U. S., 400; *Patton v. Mississippi,* 332 U. S., 463."

Mandates received 16 April, 1948.

*Attorney-General McMullan and Assistant Attorneys-General Bruton, Rhodes, and Moody for the State.*

*William Reid Dalton for defendants.*

STACY, C. J. To permit our opinion to stand in the principal case and reverse it here on similar exceptions would seem to leave the two rulings somewhat in conflict; and as precedents they will be difficult to follow. Three of the defendants in the principal case were Negroes, as are all the defendants here. The regular jury panel at the November Term was selected by the same administrative machinery as that at the October Term. Both panels were drawn in the same manner and from the same box. For all practical purposes, therefore, the several challenges to the array presented but a single question for decision.

No suggestion is given as to just what facts should be regarded as controlling here which were not operative in the principal case. The trial court made similar findings in all the cases. It will not do to say the infirmity in the original panel was cured by the special venire in the *Koritz case,* on the principle that "a little leaven leaveneth the whole," for the challenge to the original array necessarily came before it was known, or could be known, that a special venire would be needed. The mere presence on the jury of members of different groups or races is no assurance that they were selected as the law commands. Such was the holding in *Thiel v. Southern Pacific Co.,* 328 U. S., 217, 90 L. Ed., 1181: "It is immaterial that at least five members of the excluded class were on the jury which actually decided the factual issue in the case." As a matter of logic, the Negro defendants in the principal case stand on a parity with the defendants here. For us to have reached different conclusions in the cases would have been to decide two ways on practically identical exceptions.

STATE v. BRUNSON; STATE v. KING; STATE v. JONES; STATE v. JAMES;
STATE v. WATKINS.

---

Moreover, it was sought to have the same authorities applied in the principal case as are cited here, except the case of *Patton v. Mississippi,* 332 U. S., 463, which was not decided until 8 December, 1947. They are all fully considered and distinguished from the present cases in the State's brief, just as they were on petition for *certiorari* in the principal case which then apparently met with approval. The Negro defendants in the *Koritz case* challenged the regular panel array as did the defendants here, and upon the same grounds. We denied the challenge in both instances, relying in part on the cases of *S. v. Walls,* 211 N. C., 487, 191 S. E., 232, 203 U. S., 635, and *S. v. Henderson,* 216 N. C., 99, 3 S. E. (2d), 357, both of which, in turn, were predicated in large measure, on the teachings of *Thomas v. Texas,* 212 U. S., 278, 53 L. Ed., 512: "It may be that the jury commissioners did not give the negro race a full *pro rata* with the white race in the selection of the grand and petit jurors in this case; still this would not be evidence of discrimination. If they fairly and honestly endeavored to discharge their duty, and did not in fact discriminate against the negro race in the selection of the jury lists, then the Constitution of the United States has not been violated."

In the only case which was argued before us and in which an opinion was written, *certiorari* was denied. *Koritz Et Al. v. North Carolina,* 332 U. S., 768, denied 13 October, 1947. In the companion cases it was allowed, and thereupon the judgments were reversed. *Brunson, Et Al. v. North Carolina,* 333 U. S., 851, decided 15 March, 1948. It is true that "whether there has been systematic racial discrimination by administrative officials in the selection of jurors is a question to be determined from the facts in each particular case." *Patton v. Mississippi, supra.* It is also true that in appellate courts where precedents are established similar fact situations usually produce like results. Indeed, it has been thought that the equal protection of the laws required as much. It certainly "prohibits prejudicial disparities before the law." *Fay v. New York,* 332 U. S., 261. But what of the consideration given the Negro defendants in the principal case?

Further adding to the difficulty of reconciliation here, is the 5-to-4 decision of the court of last resort on 29 March, 1948, upholding the selection of a "blue ribbon" jury in New York from a panel of one hundred and fifty which contained the names of no Negroes. There, as here, was testimony to the effect that no "intentional or systematic exclusion" was practiced or intended. *Moore v. New York,* 333 U. S., 565, decided 29 March, 1948. The decision accords with the result in the *Koritz case,* albeit the opinion makes reference to the instant cases.

Nevertheless, the question now is how to proceed in these cases from here on.

Two principal exceptions were presented in the cases, the one to the overruling of the motions to quash the warrants, and the other to the denial of the challenges to the array. Our opinion dealt with both of these exceptions.

While the cases are "Reversed" by the court of last resort, it is not to be assumed the warrants are to be quashed. None of the cases cited deal with this question. Most of them speak to indictments by grand juries, but the warrants here were not passed upon by the grand jury. The composition of the grand jury is not germane to any exception in the cases. The defendants are charged with misdemeanors which, under our practice, may be tried on warrants requiring no grand-jury action. Nor is it to be assumed that the North Carolina statutes on the subject of Jurors are to be regarded as invalid, though this was argued by the defendants. The cases cited are primarily concerned with "the administrative practices of state jury selection officials."

The ambiguity or uncertainty left by the bare reversal appears to call for a word of direction from us to the trial court. Otherwise, arguments will ensue there as to whether the defendants are to be discharged or tried again.

The judgments heretofore entered in these five cases will be set aside, and the causes remanded for new jury trials in accordance with the mandates of the Supreme Court of the United States. Accordingly, the defendants will recover their costs incurred in the Supreme Court of the United States; and the costs heretofore assessed in this Court will be retaxed.

Judgments vacated.

New trials ordered.