STATE v. RALEIGH SPELLER.

(Filed 4 May, 1949.)

1. Rape § 4—

Evidence in this case of defendant's guilt of the capital offense of rape *held* sufficient to overrule defendant's motion to nonsuit. G.S. 15-173.

**2. Criminal Law § 32c: Rape § 3—**

Articles of clothing identified as those worn by the accused and the prosecutrix at the time of the crime, bearing tears and stains corroborative of the State's theory of the case, are properly admitted in evidence.

**3. Criminal Law § 33—**

Where there is evidence that incriminating statements made by defendant to officers were voluntary, it is not error for the court to admit testimony thereof in evidence.

**4. Constitutional Law § 34d—**

The constitutional right of every defendant in a criminal prosecution to be represented by counsel contemplates not only that accused shall have the privilege of engaging counsel, but also that he and his counsel shall have a reasonable opportunity in the light of all attendant circumstances to investigate, prepare, and present his defense. Constitution of N. C., Art. I, sec. 11. XIV Amendment to the Federal Constitution.

**5. Jury §§ 3, 9—**

Counsel for defendant must be prepared to support with evidence their challenge to the array when the jury is selected from citizens of the county in the ordinary course of law, but when the judge, subsequent to the convening of the term, enters an order on his own motion without notice, calling for a special venire from another county under the provision of G.S. 1-86 counsel for defendant should be given time to investigate and procure evidence in support of their challenge to the array.

**6. Constitutional Law § 33—**

Exclusion of Negroes from grand and petit juries solely because of their race or color denies Negro defendants in criminal prosecutions the equal protection of the laws required by the Fourteenth Amendment to the Federal Constitution.

**7. Same: Jury § 3—New trial awarded for failure to grant counsel opportunity to procure evidence to support challenge to the array.**

After the convening of the term the trial court entered an order for a special venire from another county under authority of G.S. 1-86. Counsel for defendant challenged the array on the ground that persons of defendant's race had been excluded from the jury list solely because of their race. The court refused the request of counsel for time to investigate and secure evidence in support of their challenge to the array, but counsel for defendant obtained evidence from members of the special venire and bystanders of the courtroom, tending to sustain their challenge. *Held:* It appearing that defendant was prejudiced by denial of reasonable opportunity to procure evidence in support of his challenge to the array, a new trial must be awarded for the denial of defendant's constitutional right to be properly represented by counsel.

**8. Constitutional Law § 33: Criminal Law § 81a: Jury § 3—**

Ordinarily, findings of the trial court that special veniremen were drawn and summoned in accordance with law and that there had been no discrimination against persons of defendant's race in preparing the jury list, are conclusive when supported by evidence, but when it appears that the

STATE *v.* SPELLER.

trial court refused to give defendant time to investigate and procure evidence in support of his challenge to the array and that such refusal amounted to a denial of defendant's constitutional right to proper representation by counsel, the findings upon incomplete evidence are not conclusive.

APPEAL by prisoner, Raleigh Speller, from *Parker, J.,* and a jury, at the November Term, 1948, of BERTIE.

This is the second time that this case has come to. this Court on the appeal of the prisoner, a Negro man, from a sentence of death pronounced on a verdict of a petit jury finding him guilty of the capital felony of rape upon a white woman. On the former appeal, this Court reversed the conviction and judgment and remanded the action to the Superior Court of Bertie County for a new trial because it concluded that the prisoner had been denied his constitutional rights through the purposeful exclusion of members of his race from the grand jury by which he was indicted. *S. v. Speller,* 229 N.C. 67, 47 S.E. 2d 537. The prisoner was indicted anew on the same charge at the August Term, 1948, of the Superior Court of Bertie County by a different grand jury composed of members of both the white and Negro races. The validity of the second indictment is not challenged. When arraigned thereon, the prisoner pleaded "not guilty" and procured a continuance of the trial to the November Term, 1948, of the Superior Court of Bertie County.

On the opening day of that term, to wit, 15 November, 1948, the presiding judge entered an order on his own motion under G.S. 1-86 directing that a special venire of 75 persons should be summoned from Warren County, a county in the same judicial district as Bertie, to appear in the Superior Court of Bertie County at 3:00 o'clock p.m. on the following day as the jury panel for the trial of this case, and providing that the names of such persons should be drawn from the jury box of Warren County by a child under ten years of age in the presence of the Clerk to the Board of Commissioners of Warren County, the Solicitor of the district, the prisoner, and counsel for the prisoner.

Neither the solicitor nor counsel for the defense had any notice that the jury panel would be called from Warren County until the trial judge read and signed the order therefor in open court on the first day of the term. Warrenton, the county seat of Warren County, is about 82 miles from Windsor, the county seat of Bertie County, where the prisoner made his home, and more than 50 miles from Durham and Raleigh, where counsel for the defense resided and ordinarily practiced law. The record does not indicate that the prisoner or his attorneys possessed any personal knowledge of Warren County or its affairs when trial was had in this case.

Pursuant to the order for the special venire, scrolls bearing 75 names were drawn from the jury box of Warren County in the courthouse at Warrenton about 5:00 p.m. on Monday, 15 November, 1948, by a child under ten years of age in the presence of the clerk to the Board of Commissioners of Warren County, the solicitor, the prisoner, and counsel for the defense. As a result of absence or illness, 18 of those whose names were drawn did not receive a summons to serve on the panel; but the remainder, consisting of 56 white men and 1 Negro, appeared at the courthouse of Bertie County in Windsor at the appointed hour on Tuesday, 16 November, 1948.

Before the trial jury was chosen, sworn, or impaneled, counsel for the prisoner lodged "a challenge to the entire array of petit jurors upon the ground of disproportionate representation of Negroes on petit juries in Warren County and long, continuous and systematic exclusion of Negroes from petit juries in Warren County, all contrary to the laws of the State of North Carolina and of the United States." When they interposed their challenge to the array, the attorneys for the defense moved "the Court to grant time to get evidence from Warren County on the issue of disproportionate representation of Negroes on petit juries and long and continuous exclusion of Negroes from petit juries in Warren County." The trial judge denied this motion, but announced that he would "hear any evidence that the defendant has," and that there were "at least 59 people from Warren County, one of whom is a Negro, in the court room."

Counsel for prisoner thereupon undertook to support the challenge to the array by calling six witnesses at random from the special veniremen and other bystanders in the courtroom. One of these witnesses, to wit, T. W. Sykes, the only Negro on the panel, testified that he had been a juror in Warren County "a time or two" in the 44 years he had resided there, but that he did not recall any other Negroes who had served on the grand jury or the petit jury in Warren County during that period. Three of the witnesses stated that "Negroes had served on petit juries in Warren County almost every term of court in the last 8 or 10 years." The other two disclaimed any knowledge of the matter in controversy. It was agreed, however, that many Negroes owned property in Warren County.

After these six witnesses had testified, the court temporarily desisted from hearing evidence on the challenge to the array and proceeded with the selection of a trial jury from the special venire of 57 persons so that members of the venire not chosen as trial jurors might not be detained in Bertie County overnight. In taking this course, the presiding judge announced that the trial jury would not be impaneled until he had ruled on the prisoner's challenge to the array. An all-white trial jury was

selected after the prisoner had exhausted the fourteen peremptory chal-
lenges allowed him by statute and had sought unsuccessfully to excuse one
of the trial jurors by a challenge to the poll.

When the trial jury was thus completed, the prisoner moved the court
that such jury be sent from the courtroom while the evidence of three
Negroes, to wit, A. V. Sykes, L. E. Sykes, and Freddie Hicks, was
offered "in continuation of the motion challenging the array of petit
jurors." This motion was denied, and these three witnesses were called
to the stand in the presence of the trial jurors. A. V. Sykes, L. E. Sykes,
and Freddie Hicks testified that they were aged 42, 41, and 39 years
respectively; that they were Negroes residing and owning property in
Warren County; that they had never been summoned to jury service in
Warren County; and that they knew of only one or two Negroes who
had ever acted as grand or petit jurors in Warren County. When the
presiding judge made his findings of fact on the prisoner's challenge to
the array, he found that "there is no evidence that these three Negroes,
or any one of them, were qualified to be selected by the Board of County
Commissioners of Warren County to be put into the jury box. The
burden of proof to show this is upon the defendant, which he has not
shown. The court takes judicial notice of the fact that thousands and
thousands of taxpayers in the United States not only do not file and pay
their taxes but cheat and defraud the Government in respect to the pay-
ment of income taxes—not only small tax payers but tax payers who are
due to pay income taxes in the hundreds of thousands of dollars. In the
face of such common knowledge it would be a rash presumption to assume
that any man has paid all the taxes assessed against him for the preceding
year."

After presenting the evidence of these three witnesses, the prisoner
rested in respect to his challenge to the array, and court adjourned for the
day. On the following morning, to wit, Wednesday, 17 November, 1948,
the State offered certain officers of Warren County as witnesses on this
phase of the controversy. They testified, in substance, that at every
biennial revision of the jury list during the twenty years last past the
Board of Commissioners of Warren County had put into the jury box
the names of all adult residents of Warren County, irrespective of their
race or color, who were of good moral character and sufficient intelli-
gence and who had paid all taxes assessed against them during the preced-
ing year. The prisoner elicited evidence on the cross-examination of the
State's witnesses to the effect that in 1940 Warren County had a popula-
tion of 23,145 people, of whom 8,036 were white and 15,109 were
Negroes, and that during the four years next preceding the drawing of
the special venire in the case at bar 1,077 whites and 28 Negroes had been
called to jury service in Warren County.

The court made voluminous findings of fact to the effect that during the twenty years next preceding the trial of this action the Board of Commissioners of Warren County had fully complied with all of the provisions of chapter 9 of the General Statutes relating to jurors by putting on the jury list and in the jury box the names of all adult residents of the county, without regard to race or color, who were "of good moral character and of sufficient intelligence" and who had made timely payment of "all the taxes assessed against them," and that no Negroes had been excluded from the grand or petit juries of the county during such period because of their race or color. On the basis of these findings, the court overruled the prisoner's challenge to the array, and thereupon the trial jury theretofore chosen from the special venire from Warren County was impaneled and charged with the case.

Both the prosecution and the defense offered testimony as to the merits of the action. No good object will be served by recounting the facts in detail. It will suffice for present purposes to note that the State's evidence tended to show that shortly after 10:30 p.m. on 18 July, 1947, the prisoner assaulted and raped the prosecutrix with savage brutality in the yard at her home a mile and a half from Windsor, and the prisoner's testimony tended to establish an alibi.

The trial judge instructed the jury that it could return any one of the following four verdicts, to wit: (1) Guilty of the capital felony of rape; (2) guilty of an assault with intent to commit rape; (3) guilty of an assault on a female person; and (4) not guilty. The jury found the prisoner guilty of the capital felony of rape, and the court pronounced judgment of death against him on the verdict. He appealed, assigning errors.

*Attorney-General McMullan and Assistant Attorneys-General Bruton, Rhodes, and Moody for the State.*

*Herman L. Taylor and C. J. Gates for the prisoner, appellant.*

ERVIN, J. The evidence of the State was sufficient to warrant a finding that the prisoner had unlawful carnal knowledge of the prosecutrix by force and against her will. Consequently, the motions for a compulsory nonsuit under G.S. 15-173 were properly denied. *S. v. Hooks,* 228 N.C. 689, 47 S.E. 2d 234; *S. v. Hunt,* 223 N.C. 173, 25 S.E. 2d 598; *S. v. Vincent,* 222 N.C. 543, 23 S.E. 2d 832; *S. v. Harris,* 222 N.C. 157, 22 S.E. 2d 229; *S. v. Johnson,* 219 N.C. 757, 14 S.E. 2d 792; *S. v. Lewis,* 177 N.C. 555, 98 S.E. 309; *S. v. Lance,* 166 N.C. 411, 81 S.E. 1092. The articles of clothing produced at the trial by the prosecution were rightly received in evidence. They were identified as garments worn by the accused and the prosecutrix at the time named in the indictment, and bore tears and stains corroborative of the State's theory of the case. *S. v.*

*Wall,* 205 N.C. 659, 172 S.E. 216; *S. v. Fleming,* 202 N.C. 512, 163 S.E. 453; *S. v. Westmoreland,* 181 N.C. 590, 107 S.E. 438; *S. v. Vann,* 162 N.C. 534, 77 S.E. 295. Since the evidence indicated that they were voluntary in character, the court did not err in admitting the incriminatory statements made by the prisoner to the officers of the law soon after the alleged crime. *S. v. Thompson,* 224 N.C. 661, 32 S.E. 2d 24; *S. v. Wagstaff,* 219 N.C. 15, 12 S.E. 2d 657; *S. v. Smith,* 213 N.C. 299, 195 S.E. 819; *S. v. Tate,* 210 N.C. 613, 188 S.E. 91; *S. v. Edwards,* 126 N.C. 1051, 35 S.E. 540. The charge of the judge to the petit jury was noteworthy for accuracy and clarity, and the exception of the accused to it is without merit.

This brings us to a grave question presented by the record: Did the trial court commit error in refusing to give counsel for the defense time to investigate the facts and to procure evidence from Warren County in support of the challenge to the array?

Both the State and Federal Constitutions secure to every man the right to be defended in all criminal prosecutions by counsel whom he selects and retains. N. C. Const., Art. I, sec. 11; U. S. Const., Amend. XIV. This right is not intended to be an empty formality. It would be a futile thing, indeed, to give a person accused of crime a day in court if he is denied a chance to prepare for it, or to guarantee him the right of representation by counsel if his counsel is afforded no opportunity to ascertain the facts or the law of the case. As the Supreme Court of Georgia declared in *Blackman v. State,* 76 Ga. 288: "This constitutional privilege would amount to nothing if the counsel for the accused are not allowed sufficient time to prepare his defense; it would be a poor boon indeed. This would be 'to keep the word of promise to our ear and break it to our hope.'" Since the law regards substance rather than form, the constitutional guaranty of the right of counsel contemplates not only that a person charged with crime shall have the privilege of engaging counsel, but also that he and his counsel shall have a reasonable opportunity in the light of all attendant circumstances to investigate, prepare, and present his defense. *S. v. Gibson,* 229 N.C. 497, 50 S.E. 2d 520; *S. v. Farrell,* 223 N.C. 321, 26 S.E. 2d 322.

Since the prisoner was detained in custody on a capital charge, he necessarily relied on his counsel to look after his defense. The action pended in the Superior Court of Bertie County, and the attorneys for the accused were charged with knowledge that in the ordinary course of law citizens would be summoned from the body of that county to serve as jurors on the trial of the cause. Manifestly, they could not be expected to anticipate or guess that the presiding judge, acting on his own motion and without any notice to them, would enter an order subsequent to the convening of the term at which the case was calendared for trial

calling a special venire from a distant and unfamiliar county to serve as jurors in the cause, notwithstanding the order was authorized by a statute specifying that "upon suggestion made as provided by section 1-84 or on his own motion, the presiding judge, instead of making order of removal, may cause as many jurors as he deems necessary to be summoned from any county in the same judicial district or in an adjoining district by the sheriff or other proper officer thereof, to attend, at such time as the judge designates, and serve as jurors" in any action in the event there are probable grounds to believe that a fair and impartial trial of such action cannot otherwise be obtained. G.S. 1-86. Besides, counsel for the accused could not determine the desirability or the propriety of challenging the array until the panel was drawn and its character ascertained. For these reasons, the defense was justifiably unprepared to prove the validity of the challenge to the array when the special veniremen appeared in the Superior Court of Bertie County.

When he lodged his challenge to the array, the prisoner invoked the principle enunciated by repeated decisions of the Supreme Court of the United States that state exclusion of Negroes from grand and petit juries solely because of their race or color denies Negro defendants in criminal cases the equal protection of the laws required by the Fourteenth Amendment to the Federal Constitution. *Brunson v. North Carolina,* 332 U.S. 851, 68 S. Ct. 634, 92 L. Ed. 1132; *Patton v. Mississippi,* 332 U.S. 463, 68 S. Ct. 184, 92 L. Ed. 76, 1 A.L.R. 2d 1286; *Akins v. Texas,* 325 U.S. 398, 65 S. Ct. 1276, 89 L. Ed. 1692; *Hill v. Texas,* 316 U.S. 400, 62 S. Ct. 1159, 86 L. Ed. 1559; *Smith v. Texas,* 311 U.S. 128, 61 S. Ct. 164, 85 L. Ed. 84; *Pierre v. Louisiana,* 306 U.S. 354, 59 S. Ct. 536, 83 L. Ed. 757; *Hale v. Kentucky,* 303 U.S. 613, 58 S. Ct. 753, 82 L. Ed. 1050; *Hollins v. Oklahoma,* 295 U.S. 394, 55 S. Ct. 784, 79 L. Ed. 1500; *Norris v. Alabama,* 294 U.S. 587, 55 S. Ct. 579, 79 L. Ed. 1074; *Rogers v. Alabama,* 192 U.S. 226, 24 S. Ct. 257, 48 L. Ed. 417; *Carter v. Texas,* 177 U.S. 442, 20 S. Ct. 687, 44 L. Ed. 839; *Smith v. Mississippi,* 162 U.S. 592, 16 S. Ct. 900, 40 L. Ed. 1082; *Gibson v. Mississippi,* 162 U.S. 580, 16 S. Ct. 906, 40 L. Ed. 1078; *Bush v. Kentucky,* 107 U.S. 110, 1 S. Ct. 625, 27 L. Ed. 354; *Neal v. Delaware,* 103 U.S. 370, 26 L. Ed. 567; *Ex Parte Virginia,* 100 U.S. 339, 25 L. Ed. 676; *Virginia v. Rives,* 100 U.S. 321, 25 L. Ed. 670; *Strauder v. West Virginia,* 100 U.S. 303, 25 L. Ed. 664. As the text writer in 16 C.J.S., Constitutional Law, section 540, has declared: "This does not mean that a jury must be composed of persons of each race in proportion to their respective numbers as citizens; nor does the equal protection of the laws give a Negro or other person the right to demand that the grand or trial jury, considering his case, shall be composed, wholly or in part, of persons of his own race or color, the only right to which he is entitled being that in the selection of jurors

persons of his race or color shall not be discriminated against or excluded on that account." Various aspects of this question are considered in these North Carolina cases: *S. v. Speller, supra; S. v. Brunson,* 229 N.C. 37, 47 S.E. 2d 478; *S. v. Koritz,* 227 N.C. 552, 43 S.E. 2d 77, *certiorari* denied 332 U.S. 768, and rehearing denied 332 U.S. 812, 68 S. Ct. 106, 92 L. Ed. 390; *S. v. Henderson,* 216 N.C. 99, 3 S.E. 2d 357; *S. v. Walls,* 211 N.C. 487, 191 S.E. 232, *certiorari* denied 302 U.S. 635, 58 S. Ct. 18, 82 L. Ed. 494; *S. v. Cooper,* 205 N.C. 657, 172 S.E. 199; *S. v. Daniels,* 134 N.C. 641, 46 S.E. 743; *S. v. Peoples,* 131 N.C. 784, 42 S.E. 2d 814; *S. v. Sloan,* 97 N.C. 499, 2 S.E. 666; *Capehart v. Stewart,* 80 N.C. 101.

The trial court made findings that the special veniremen were drawn and summoned in accordance with the laws of the State, and that there had been no discrimination against persons of the prisoner's race in preparing the jury list. These findings were supported by evidence, and ordinarily would be conclusive on appeal in controversies of this nature. *S. v. Walls, supra; S. v. Cooper, supra; S. v. Daniels, supra; S. v. Peoples, supra.*

In the case at bar, however, the action of the presiding judge in calling trial jurors from a distant county took the prisoner and his counsel by surprise, and rendered them justifiably unprepared forthwith to sustain by testimony the challenge to the array, which was apparently interposed in good faith and on reasonable grounds.

Attorneys for the defense asked the court, in substance, for time to investigate relevant matters in Warren County, and to secure evidence there to substantiate the validity of the challenge to the array. The court refused this request. By virtue of this ruling, counsel for the prisoner were compelled to resort at random to the special veniremen and to bystanders in the courtroom at Windsor, eighty-two miles from the county seat of Warren County, to sustain the proposition that the Board of Commissioners of Warren County had purposely excluded Negroes from the jury list of Warren County and from the venire in question solely on account of their race or color. Despite the handicap under which they labored, counsel for the defense elicited testimony from their witnesses and from witnesses called to the stand by the State indicating that the case for the State might well have been so weakened, or the case for the prisoner might well have been so strengthened as to have required contrary findings and an opposite order in respect to the lawfulness of the panel if they had been granted a reasonable time for investigation, preparation, and presentation of the prisoner's case on the challenge to the array. Thus, the record discloses not only that the prisoner and his attorneys were denied a reasonable opportunity in the light of prevailing conditions to investigate, prepare, and present his defense on the chal-

lenge to the array, but also that such denial of such opportunity prejudiced the prisoner's rights.

The declaration of the Supreme Court of Pennsylvania in *Brown v. Hummel,* 6 Pa. State 86, 47 Am. Dec. 431, is apposite. "When the humblest citizen comes into court with the constitution of his country in his hand, we dare not disregard the appeal." Since it appears from the record that the prisoner has been denied the fundamental right of representation by counsel vouchsafed him by both the State and Federal Constitutions, the conviction and sentence are vacated, and the action is remanded to the Superior Court of Bertie County for a

New trial.