[Crim. No. 3842.   First Dist., Div. Two.   Nov. 20, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT E. HARTLEY et al., Defendants and Appellants.

112

E. Judge Elderkin, under appointment by the District Court of Appeal, for Defendants and Appellants.

Stanley Mosk, Attorney General, Arlo E. Smith and Edward P. O'Brien, Deputy Attorneys General, for Plaintiff and Respondent.

SHOEMAKER, J.—Defendants Hartley, Willis and Smith, convicted of robbery in the first degree and rape in four counts, appeal from the judgment.

Defendant Smith, convicted of violating section 288a of the Penal Code, also appeals from that judgment.

The record shows that on October 26, 1959, at approximately 4:45 a. m., Daniel Roosendahl and Carmen Simpson drove to Coit Tower on Roosendahl's motor scooter. After they had been there about 15 minutes, another car drove up, and four Negro men got out. One of these men asked Mrs. Simpson for money. When she told him that she had no money, he said, "Let me see," and proceeded to unbutton her coat and put his hands on her stomach. Mrs. Simpson then found a dollar in her pocket and gave it to him. While one of the men held an iron bar raised at about shoulder level, another of the men took Mr. Roosendahl's wallet and removed the money. The loose change was also removed from Mr. Roosendahl's pocket. One of the four men then proceeded to order Mrs. Simpson inside the automobile where each of the four men then had an act of sexual intercourse with her. In addition, one of the men forced Mrs. Simpson to engage in an act of oral copulation with him. The four men then released Mrs. Simpson, got into the car, and drove away.

At the commencement of the trial, defendants stipulated that the crimes of robbery, rape, and oral copulation had been committed. The only question to be determined by the jury was thus one of identification. All three defendants were sailors stationed at Treasure Island. On the evening of October 29, 1959, three days after the crimes had been committed, Hartley, Willis, Smith, and a fourth Negro sailor,

Gilbert, had come into San Francisco to spend the evening when they were picked up by the police, apparently for the reason that they matched the descriptions given the police by Mrs. Simpson and Mr. Roosendahl. The defendants were taken to the police station and put in a lineup, where they were identified by Mr. Roosendahl and subsequently by Mrs. Simpson.

All defendants based their defense on the claim that they had not been in the vicinity of Coit Tower at the time the crimes were committed, but had been at Treasure Island. Their respective alibis were not established to the satisfaction of the jury, and the record in this case warrants the jury's adverse finding. However, since defendant Willis bases his claim of reversible error in part on his showing with respect to his alibi and the district attorney's remarks with respect thereto, in which he is joined by his codefendants, we set forth the pertinent facts.

Defendant Willis contended that his morning duties involved picking up and distributing pastries from the main galley between 5 and 5:20 a. m., and that although no one had seen him performing his duties on the morning in question, there were no complaints as to the delivery thereof, hence he must have performed his duties on the morning of the crime in the usual manner.

It appears that during the argument of Willis' counsel to the jury and while he was arguing that if the pastries were not delivered on time there would have been a complaint, the following exchange occurred: "MR. ANDERSEN: [counsel for appellant Willis] . . . Well, Willis was a fine man, never been in any trouble, no criticism, no nothing, was working during that morning, was working during each morning the job was done. Were there any complaints? No. MR. DERIMAN: [district attorney] Wait a minute. Now yesterday we, in chambers, your Honor, there was a conference concerning a certain witness and I was assured there would be no discussion about the witness, if I didn't call the witness. I didn't call the witness. In fact, I wanted to call the witness, and he argued—you remember the discussion. THE COURT: Yes. MR. ANDERSEN: I am going to demand a mistrial now. Counsel is making an absolute, deliberate, misstatement, an absolute and deliberate misstatement. MR. DERIMAN: He wants to mention the name—— MR. ANDERSEN: I am going to mention the name now. This man he wanted to call was Bleth. He said he was going to call Bleth. He did not call Bleth. MR. DERIMAN: You

said you wouldn't comment. MR. ANDERSEN: I said I wouldn't comment on Bleth, no, by calling him—— MR. DERIMAN: That is correct. MR. ANDERSEN: That's all I said. I said, 'Call the witness if you want to.' '' This flareup between counsel is referred to by the district attorney in his closing argument to the jury in the following manner: ''You're led to believe, and you're asked to accept at this point of time that on that particular morning there was no complaint about those deliveries being made on that basis. That's what you're led to believe. Now I can't go outside the record. All I can testify —all I can do here is argue what's in that record in the way of evidence. I'm bound by that. I wish I knew what to say here. Apparently there's some misunderstanding between myself and other counsel and the Court. I can't tell you what any other witnesses testified to, all I can tell you is that a man named Bleth, I thought his testimony ought to be in the record. It wasn't. Apparently I misunderstood to what extent comment would be made upon it. But we'll leave it right there. I won't go any further on that subject, but I ask you ladies and gentlemen of the jury to examine this carefully before you conclude that there was no complaint against Willis' being late that particular morning, October 26th, with the delivery of the pastries.''

Based upon the foregoing remarks of the district attorney, the appellant argues that his reference to a man named Bleth was designed to create an inference in the jurors' minds that there had in fact been a complaint as to the pastry deliveries on the morning of October 26, and that Bleth could have testified as to this complaint but was prevented from doing so by the actions of defense counsel; hence, that the district attorney commented on evidence which was not within the record and, in addition, raised the inference that defendant Willis and his counsel concealed or withheld evidence regarding Bleth.

As for the district attorney's remarks, it may be noted that the jurors were never told what Bleth would have testified had he been called as a witness. The district attorney stated only that he thought Bleth's testimony ''ought to be in the record,'' but that he would go no further on that subject. He then requested the jurors to consider carefully the evidence which had been presented as to the absence of complaints. It seems highly unlikely that these comments alone could have led the jurors to suspect that Bleth's testimony related to delivery complaints and had been wrongfully withheld by

defense counsel. Appellants appear to have arrived at their interpretation of the district attorney's comments only after an extremely painstaking analysis of comments which the district attorney delivered extemporaneously to the jurors. It is difficult to believe that the jury would have attached any great significance to these remarks, particularly since they were made at the conclusion of a lengthy trial during which the district attorney and counsel for appellant Willis repeatedly took part in heated exchanges. Our opinion that this asserted error was of slight consequence is confirmed by the action of Willis' counsel, with many years of experience in the trial of criminal matters, who did not assign the remarks either as misconduct or ask that the jury be instructed to disregard the same.

Furthermore, appellants neglect to point out that the name Bleth was first brought to the jurors' attention by Willis' counsel and the rule is well established that an appellant may not complain of error which was invited or provoked by the actions of his own counsel. (See *People* v. *Escobar* (1953) 122 Cal.App.2d 15, 19 [264 P.2d 571].) It is clear from the record in this case that Willis' counsel took an active part in the discussion which first acquainted the jurors with Bleth, and that the district attorney's remarks added nothing to the facts which had already been brought out by defense counsel himself. We cannot conceive how Willis' case was in any way prejudiced by these remarks, for the record contains ample evidence of his guilt. Willis was positively identified by two eyewitnesses and was unable throughout the course of the trial to produce even one witness who could give unequivocal support to his alibi.

As to appellants Smith and Hartley, we fail to see how any prejudice could possibly have resulted to them from the district attorney's references to Bleth. Appellants' entire predication of error is based on the doubtful premise that the district attorney's remarks led the jury to doubt that appellant Willis had performed his assigned deliveries on the morning of the crimes. It may be noted that appellants Hartley, Willis and Smith all sought to establish alibis which were completely separate and distinct from one another. Indeed, appellants' testimony was to the effect that they had not even known one another on the date of the crimes. Appellant Willis, for example, testified that he had never spoken to appellant Smith until two days after the crimes, on October 28. As for appellant Hartley, Willis testified that he

thought he might have spoken to him once on the day after the crimes occurred. All three appellants introduced entirely different evidence in support of their alibis, and it would seem clear that Hartley and Smith could not be deemed to have suffered prejudice even had the district attorney's remarks cast doubt on Willis' alibi. It is certainly within the jury's province to find one codefendant guilty and the other not guilty. (*People* v. *Massie* (1953) 122 Cal.App.2d 235 [264 P.2d 671] ; *People* v. *Shaw* (1953) 115 Cal.App.2d 597, 600 [252 P.2d 670] ; *People* v. *Stembridge* (1950) 99 Cal. App.2d 15, 24 [221 P.2d 212] ; *People* v. *Taylor* (1948) 88 Cal.App.2d 983, 988 [199 P.2d 751].) Since the district attorney's remarks in the instant case would not appear to have been prejudicial even as to appellant Willis, it would seem that no reversal is warranted as to any of the appellants.

Appellants' final assignment of error is that the trial court improperly admitted evidence pertaining to the condition of the appellants' shorts. The events leading up to the introduction of this evidence may be summarized as follows. Counsel for appellant Willis first called as a witness John Williams, a criminologist for the City and County of San Francisco. Mr. Williams testified that he had made a thorough investigation of the car purportedly used by appellants in the commission of the crimes. He testified that he had been unable to find any evidence whatever of any residual seminal fluid, any identifiable fingerprints, or any identifiable hair or clothing fragments. The district attorney then made Mr. Williams his own witness and questioned him in regard to shorts which had been taken from appellants on November 3, 1959. Defense counsel for appellant Willis objected to this evidence on the ground that these shorts had not been taken from appellants until eight days after the crimes had occurred, and the evidence was therefore not relevant unless it could be shown that these shorts had been worn on October 26. This objection was overruled as going to the weight rather than the admissibility of the evidence. Mr. Williams was then allowed to testify that he had found semen on the shorts of all three appellants.

On cross-examination by defense counsel, Mr. Williams testified that it would have been possible for these stains of semen to have resulted through a normal excretion rather than through an act of sexual intercourse. Appellant Willis testified that he had put on clean shorts on the evening of October 29. Appellant Smith testified that he had put on

clean shorts on October 28. It was also established that none of the appellants had changed their shorts between the time when they were taken into custody on October 29 and the time when the shorts were taken from them on November 3.

Under these circumstances, it would appear that the trial court did not err in admitting into evidence the testimony that semen had been found on appellants' shorts. The question of what weight should be given this evidence was properly one for the jury. Appellants had ample opportunity to show that the stains need not have been caused by a prior act of intercourse. Appellants further testified that these were not the same shorts which they had worn on the night of the crime. Certainly the presence of semen on the shorts of all three appellants was of sufficient probative value to warrant the admission of this testimony. It was for the jury to determine whether these stains were merely the result of an odd coincidence or were vital links in the chain of circumstances connecting appellants with the crimes.

The courts have repeatedly held that remoteness affects only the weight and not the admissibility of evidence. (*People* v. *Donaldson* (1955) 130 Cal.App.2d 250, 256 [278 P.2d 739] ; *People* v. *Hall* (1938) 25 Cal.App.2d 336, 339 [77 P.2d 244] ; *People* v. *Simons* (1914) 25 Cal.App. 723 [145 P. 145].) They have further held that the question of admissibility of evidence as related to its remoteness lies within the trial court's sound discretion. (*People* v. *MacArthur* (1954) 125 Cal.App.2d 212, 219 [270 P.2d 37] ; *People* v. *Arrangoiz* (1937) 24 Cal.App.2d 116 [74 P.2d 789].)

Appellants contend, however, that the evidence was "potentially suggestive" and likely to have a prejudicial effect on the jurors. In *People* v. *Clark* (1951) 104 Cal.App.2d 634 [232 P.2d 290], the defendant was convicted of lewd conduct with a child, and it was held on appeal that the trial court had properly admitted into evidence panties of the child and underwear of the defendant which contained similar yellowish stains. The defendant had argued on appeal that the sight of this evidence tended to inflame the jury. The court affirmed the judgment of conviction, holding the evidence clearly admissible.

In the case at bar, it would seem that there would be even less likelihood of an inflammatory effect on the jury, since the shorts themselves were never introduced into evidence. Mr. Williams merely testified as to the results of his examination.

It would thus seem clear that appellants' objections to the evidence are not well founded and that the trial court did not err in holding it admissible.

Judgment affirmed.

Kaufman, P. J., and Agee, J., concurred.