## STATE OF NORTH CAROLINA v. ELMO BARBER

### No. 16

### (Filed 10 March 1971)

**1. Criminal Law § 76— confession — voir dire hearing**

When defendant objected to testimony relating to inculpatory statements purportedly made by him, the trial judge properly held a *voir dire* hearing to determine whether the statements were in fact voluntarily and understandingly made.

**2. Criminal Law § 76— admissibility of confession**

When one is on trial for an alleged criminal offense, a confession or admission by him may not be admitted in evidence over his objection unless it was made voluntarily and understandingly and was not induced through use by the police of the slightest emotions of hope or fear.

**3. Criminal Law § 76— confession — voir dire hearing — court's findings and conclusions**

In this prosecution for first degree burglary and rape, there was competent evidence to support the findings of fact made by the trial court at the conclusion of a *voir dire* hearing on the admissibility of defendant's confession, and the findings of fact support the court's conclusions that defendant's statements were freely, voluntarily, knowingly and intelligently made.

**4. Criminal Law § 60— fingerprints taken after arrest — admissibility**

Evidence of fingerprints taken while defendant was in custody under a warrant charging him with two capital crimes was not rendered inadmissible by the decision of *Davis v. Mississippi*, 394 U.S. 721, relating to fingerprints taken without arrest during a dragnet proceeding.

**5. Criminal Law § 60— admissibility of fingerprints**

Exhibits containing fingerprints lifted from the crime scene and fingerprints taken from defendant after his arrest were sufficiently identified for their admission into evidence.

**6. Constitutional Law § 36; Burglary § 8; Rape § 7— death penalty — first degree burglary — rape — cruel and unusual punishment**

Statutes providing for capital punishment for rape and for burglary in the first degree are not unconstitutional on the ground that the death penalty constitutes cruel and unusual punishment in violation of the Eighth Amendment to the Constitution of the United States. G. S. 14-21; G.S. 14-52.

**7. Constitutional Law § 36— cruel and unusual punishment**

When punishment does not exceed the limits fixed by statute, it cannot be classified as cruel and unusual in a constitutional sense.

State v. Barber

8. **Constitutional Law § 29; Criminal Law § 135— death penalty — federal decisions**

   The death penalty has not been abolished in North Carolina by decisions of the United States Supreme Court and the Fourth Circuit Court of Appeals.

9. **Criminal Law § 68; Rape § 4— hair found at crime scene — defendant's hair**

   In this prosecution for first degree burglary and rape, the trial court properly admitted testimony by an F.B.I. agent assigned to the hair and fiber unit of the Bureau that hair found on linen taken from the bed where the rape occurred was Negro pubic hair and that it was microscopically identical to hair taken from defendant.

APPEAL by defendant from *James, J.*, August 1970 Criminal Session of PITT.

Defendant was charged jointly with Thomas Earl Stocks, in two separate bills of indictment, with rape and first degree burglary. Defendant was tried on both bills and was found guilty as charged, with recommendations of life imprisonment on each charge. From judgment pronounced in accordance therewith, defendant appealed.

At trial the State offered evidence which indicated the following: On 27 April 1970 at approximately 1:30 a.m., two men, a Negro and a white man, entered the home occupied by Mrs. Ann Baker Barry and her infant daughter, and each raped Mrs. Barry by force and against her will. Mrs. Barry's husband was away from home on this occasion, and she and her thirteen-months-old daughter were alone in the house. Before she went to bed about 11 p.m., Mrs. Barry locked the doors to the house. When she awoke later and saw the two men in her bedroom she screamed. One of the men pressed a knife against her throat and threatened her and her infant daughter; when she attempted to resist, the knife was pressed harder against her throat, inflicting a number of cuts or nicks. After raping her, the two men left. Mrs. Barry waited a short time and then summoned the assistance of a neighbor and officers from the Pitt County Sheriff's Department.

Officers from the Sheriff's Department arrived at the home about 2:30 a.m. and found that the back screen was ripped open, the lock to the main door was chipped on the side, and this door was open. There were also scratches on the sliding glass doors to the den. Fingerprints located on the door to

Mrs. Barry's bedroom were later identified as defendant's. Other physical evidence removed at this time included bed linens on which samples of human hair were found.

About one week later, on Friday, May 1, 1970, two members of the Pitt County Sheriff's Department questioned the defendant concerning this crime. The defendant denied any knowledge concerning it. The next day the defendant was again questioned, at which time the defendant admitted that he and Stocks broke into the home of Mrs. Barry and that each of them raped her. He then took the officers to his home where he gave them the knife which he said was pressed against Mrs. Barry's throat while she was being raped.

Dr. Edgar S. Douglas, an obstetrician and gynecologist, examined Mrs. Barry at 3:45 a.m. on the night the crime was committed. He found a series of marks on her neck, fresh scratch marks, and his examination revealed the presence of male spermatozoa in Mrs. Barry's vagina.

Defendant only offered the testimony of Dr. Bruce Kyles. This testimony and other evidence germane to the decision in this case will be discussed in the opinion.

*Attorney General Robert Morgan and Deputy Attorney General Ralph Moody for the State.*

*M. E. Cavendish for defendant appellant.*

MOORE, Justice.

**[1]** Defendant first contends that the trial court erred in admitting the confession of the defendant.. When the defendant objected to the testimony relating to the inculpatory statements purportedly made by him, the trial judge properly held a *voir dire* hearing to determine whether the statements were in fact voluntarily and understandingly made. *State v. Hill,* 276 N.C. 1, 170 S.E. 2d 885; *State v. Wright,* 275 N.C. 242, 166 S.E. 2d 681; *State v. Conyers,* 267 N.C. 618, 148 S.E. 2d 569; *State v. Rogers,* 233 N.C. 390, 64 S.E. 2d 572, 28 A.L.R. 2d 1104. Both the defendant and the State offered evidence on the *voir dire.*

Defendant's evidence tended to show that he was first taken into custody by the officers on 1 May 1970 and was questioned for some one and one-half hours, after which he was

released; that he was again taken into custody on May 2 about 2:00 or 2:30 p.m. and was held without a warrant until around 7:30 or 9:00 a.m. on May 3; that when he was taken into custody on May 2 at his home he had been drinking gin and beer and was intoxicated; that during some five hours of questioning in the presence of several officers he repeatedly denied his guilt; that while he was being questioned one officer had a blackjack in his hand, and there was a can of mace sitting on the table; that he was promised he would be released under a $10,000 bond if he would confess. He further testified that he was not given any supper, and no lawyer was appointed to represent him. The testimony of Dr. Kyles shows that defendant has an IQ of 73, or the equivalent of a mental age of about fourteen years old.

The State offered the testimony of Deputy Sheriff Respess, corroborated by Deputy Sheriff Oakley, Sheriff Tyson, Deputy Sheriff Martin, and State Bureau of Investigation Agent Gilbert. This testimony tends to show that the defendant was given ample warnings concerning his rights; that he stated he understood his rights and that he did not want an attorney; that on both days he was interrogated the defendant came with the officers voluntarily; that on May 2 when questioned the defendant was not intoxicated, and that during the times he was being questioned he was not under arrest, but after having been interrogated on the first day, he was allowed to return home; that while being questioned on the second day he was not fed supper because he said he did not want any, but he was permitted to go to the drink machine to get a Pepsi Cola and nabs; that no promise concerning a bond was made to the defendant; that the defendant was not threatened or mistreated in any manner; that he confessed about 7:30 p.m. and was then taken into custody; and that a warrant was secured and served on him early next morning. The evidence further showed that the defendant had finished the sixth grade in school; that he had been on probation and understood his right to have a lawyer; that according to Dr. Bruce Kyles, an expert in the field of psychiatry, the defendant was able in all respects to consult with his counsel and to participate in his own defense, and that he understood his situation quite well.

[2] It is well-settled law in this State that when one is on trial for an alleged criminal offense a confession or admission by

him may not be admitted in evidence over his objection unless it was made voluntarily and understandingly, not induced through use by the police of "the slightest emotions of hope or fear." *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1. Justice Lake stated in *Gray:*

> "However, the mere fact that a confession was made while the defendant was in the custody of police officers, after his arrest by them upon the charge in question and before employment of counsel to represent him, does not, of itself, render it incompetent. *State v. Barnes, supra* [264 N.C. 517, 142 S.E. 2d 344]; *State v. Crawford, supra* [260 N.C. 548, 133 S.E. 2d 232]; *State v. Rogers,* 233 N.C. 390, 64 S.E. 2d 572, 28 A.L.R. 2d 1104; *State v. Thompson,* 224 N.C. 661, 32 S.E. 2d 24. The test of admissibility is whether the statement by the defendant was in fact made voluntarily. *State v. Rogers, supra; State v. Gosnell,* 208 N.C. 401, 181 S.E. 323; *State v. Livingston,* 202 N.C. 809, 164 S.E. 337. 'Any circumstance indicating coercion or lack of voluntariness renders the admission incompetent.' *State v. Guffey, supra* [261 N.C. 322, 134 S.E. 2d 619]. The fact that the defendant was in custody when he made the statement is a circumstance to be considered. *State v. Guffey, supra.* The mental capacity of the defendant is also a circumstance to be considered. *State v. Whittemore,* 255 N.C. 583, 122 S.E. 2d 396. There may, of course, be coercion of the mind without physical torture or threat thereof. *State v. Chamberlain,* 263 N.C. 406, 139 S.E. 2d 620.

> "Whether the defendant did or did not make the statement attributed to him is a question of fact to be determined by the jury from the evidence admitted in its presence. *State v. Guffey, supra.* Whether the statement, assuming it to have been made, was made voluntarily and understandingly, so as to permit evidence thereof to be given in the presence of the jury, is a question of fact to be determined by the trial judge in the absence of the jury upon the evidence presented to him in the jury's absence. *State v. Outing,* 255 N.C. 468, 121 S.E. 2d 847, *cert. den.,* 369 U.S. 807, 82 S.Ct. 652, 7 L. Ed. 2d 555."

[3] At the conclusion of the *voir dire* hearing in the present case, the trial judge made full findings of fact. Such findings of fact, so made by the trial judge, are conclusive if they are

supported by competent evidence in the record. No reviewing court may properly set aside or modify those findings if so supported. Here, there was competent evidence to support the findings of fact, and the findings of fact supported the conclusions that the defendant's statements were freely, voluntarily, knowingly, and intelligently made. *State v. Wright, supra; State v. Gray, supra; State v. Barnes,* 264 N.C. 517, 142 S.E. 2d 344; *State v. Chamberlain,* 263 N.C. 406, 139 S.E. 2d 620.

This assignment is overruled.

[4] Defendant next contends that under *Davis v. Mississippi,* 394 U.S. 721, 22 L. Ed. 2d 676, 89 S.Ct. 1394 (1969), State's Exhibit 7, showing fingerprints taken from the defendant while in custody, was improperly admitted into evidence. The present case is clearly distinguishable from *Davis.* In *Davis,* an 86-year-old white woman had been raped by a Negro youth. Beginning on December 3 and for a period of ten days, the Meridian Police, without warrants, took at least 24 Negro youths to the police station where they were fingerprinted and released without charge. The police also interrogated 40 or 50 other youths. On December 12 the police drove Davis 90 miles to Jackson without a warrant or probable cause for his arrest, where he was fingerprinted a second time. The Federal Bureau of Investigation reported that these prints matched those taken from the window in the home of the woman who had been raped. The United States Supreme Court held that this dragnet proceeding, without arrest, rendered the use of the fingerprints illegal. In the case at bar the fingerprints of the defendant shown on State's Exhibit 7 were taken on May 4 while he was being held in custody under a warrant which charged him with two capital crimes. Under these facts, *Davis* does not apply. *Branch v. State,* 269 N.C. 642, 153 S.E. 2d 343; 2 Strong's N. C. Index 2d, Constitutional Law § 33, p. 270.

[5] Defendant further contends that the fingerprints shown on State's Exhibits 6 and 7 were not properly identified. Both exhibits were mailed from the Greenville Police Department to the Federal Bureau of Investigation in Washington, D. C. The defendant contends there is no evidence as to how Mr. Conover, the witness from the Federal Bureau of Investigation who testified concerning them, received these exhibits, or as to what might have happened to them after they were taken. Euel

H. Atkinson, an officer trained in fingerprinting, testified without objection as to how he removed and placed on tape the latent fingerprints from the door in Mrs. Barry's bedroom. He further testified that he placed his initials on the tape, and that the fingerprints on State's Exhibit 6 are the ones which he took from Mrs. Barry's bedroom door at approximately 3 a.m. on 27 April 1970. Sergeant W. H. Tripp, an officer trained in fingerprinting, testified that he took defendant's fingerprints on 4 May 1970 on a card identified as State's Exhibit 7, that both he and Elmo Barber signed the card at the time he took the fingerprints, and that the prints appearing on State's Exhibit 7 are Elmo Barber's fingerprints. Mr. Philip W. Conover, a fingerprint examiner with the Federal Bureau of Investigation, testified that he had examined State's Exhibits 6 and 7 and had made a comparison of the fingerprints appearing on these two exhibits. He further testified that he had photographed the two exhibits, had the photographs enlarged or blown up, and that the prints on State's Exhibits 6 and 7 were made by the same person. He also testified that a fingerprint card with the name Elmo Barber thereon was received by the Federal Bureau of Investigation on 21 November 1966, and that the prints on that card were the same as those on State's Exhibits 6 and 7. There was no evidence that the prints appearing on State's Exhibits 6 and 7 had been in any manner altered or tampered with. To the contrary, both exhibits were identified by the officers making them as being the same as when made. These exhibits were properly admitted into evidence, and this assignment of error is without merit. *Hunt v. Wooten,* 238 N.C. 42, 76 S.E. 2d 326; *Bynum v. United States,* 274 F. 2d 767 (D.C. Cir., 1960) ; 32 C.J.S. Evidence § 607(a), p. 766.

[6, 7]   Defendant next assigns as error the denial of his motion to quash the bill of indictment. Defendant contends that the North Carolina statutes providing for capital punishment are unconstitutional in that punishment by death is a cruel and unusual punishment and violates the Eighth Amendment to the Constitution of the United States. Defendant relies on *Ralph v. Warden,* 438 F. 2d 786 (4th Cir., 1970), which holds that in a rape case where no physical injury occurred, the death penalty was cruel and unusual. This is a Maryland case from the Fourth Circuit Court of Appeals and is not binding on this Court. *State v. Barnes, supra;* 2 Strong's N. C. Index 2d, Constitutional Law § 1; 20 Am. Jur. 2d Courts § 230; Annot., 147 A.L.R.

857, 858. G.S. 14-21 provides for the death penalty for rape, and G.S. 14-52 provides for the death penalty for burglary in the first degree. Both statutes provide that the jury may recommend life imprisonment, and if the jury so recommends, the punishment shall be life imprisonment. The punishment imposed in this case was life imprisonment. When punishment does not exceed the limits fixed by statute, it cannot be classified as cruel and unusual in a constitutional sense. *State v. Rogers,* 275 N.C. 411, 168 S.E. 2d 345; *State v. Greer,* 270 N.C. 143, 153 S.E. 2d 849; *State v. Bruce,* 268 N.C. 174, 150 S.E. 2d 216; *State v. Davis,* 267 N.C. 126, 147 S.E. 2d 570.

In *Trop v. Dulles,* 356 U.S. 86, 2 L. Ed. 2d 630, 78 S.Ct. 590 (1958), the Supreme Court of the United States said: "Whatever the arguments may be against capital punishment, both on moral grounds and in terms of accomplishing the purposes of punishment—and they are forceful—the death penalty has been employed throughout our history, and, in a day when it is still widely accepted, it cannot be said to violate the constitutional concept of cruelty."

This assignment is overruled.

[8] The defendant's contention that the death penalty has been abolished in North Carolina by the decisions in *United States v. Jackson,* 390 U.S. 570, 20 L. Ed. 2d 138, 88 S.Ct. 1209 (1968), and *Alford v. North Carolina,* 405 F. 2d 340 (4th Cir., 1968), is without merit. *North Carolina v. Alford,* 400 U.S. 25, 27 L. Ed. 2d 162, 91 S.Ct. 160 (1970), reversing the decision of the Fourth Circuit Court of Appeals reported in 405 F. 2d 340; *State v. Lee,* 277 N.C. 205, 176 S.E. 2d 765; *State v. Atkinson,* 275 N.C. 288, 167 S.E. 2d 241; *State v. Spence,* 274 N.C. 536, 164 S.E. 2d 593; *State v. Peele,* 274 N.C. 106, 161 S.E. 2d 568.

[9] Defendant next contends that the court erred in admitting testimony about hair fibers found at the scene of the crime, in that the testimony was of a speculative nature and, therefore, inadmissible.

"Testimony is relevant if it reasonably tends to establish the probability or improbability of a fact in issue." *Freeman v. Ponder,* 234 N.C. 294, 67 S.E. 2d 292; Stansbury, N. C. Evidence §§ 77-78 (2d ed., 1963).

In *State v. Ray,* 274 N.C. 556, 164 S.E. 2d 457, a Negro was tried for rape of a white woman. Testimony was introduced as to hair found in the car where the alleged rape occurred. Chief Justice Parker said:

" . . . The trial court properly refused to strike out the evidence that laboratory tests of the F.B.I. showed that on the lower front portion of the sweater and on the left sleeve of the sweater turned over to the police by Mary Ann Gibson were reddish brown smears that came from human blood, for the simple reason that the jury could make a reasonable inference from the evidence that the sweater was a garment worn by the defendant at the time named in the indictment, and bore stains corroborative of the State's theory of the case. *S. v. Speller,* 230 N.C. 345, 53 S.E. 2d 294; *S. v. Bass,* 249 N.C. 209, 105 S.E. 2d 645; *People v. Hartley* (Dist. Ct. of Appeals), 17 Cal. Rptr. 286. *For the same reason the court properly admitted into evidence the testimony of a special agent of the F.B.I., whose particular specialty is the microscopic examination of hairs and fibers, textile material, and related materials in criminal cases, that on the sweater introduced in evidence there was hair possessing Negro characteristics. Nicholas v. State* (Court of Criminal Appeals), 270 S.W. 555; *People v. Kirkwood,* 17 Ill. 2d 23, 160 N.E. 2d 766; 75 C.J.S. Rape §§ 47 and 59.

"The court properly admitted into evidence the expert testimony that hair possessing Negro characteristics was found in the debris of Mrs. Jeane Daily's automobile where the alleged rape took place. Certainly no constitutional rights of defendant were violated by the search of Mrs. Jeane Daily's automobile." (Emphasis ours.)

In the case at bar, Myron Scholberg, an agent with the Federal Bureau of Investigation assigned to the hair and fiber unit of the Bureau, testified that hair found on the sheet and bedspread taken from Mrs. Barry's bed soon after the commission of the crime was Negro pubic hair, and that this hair found on Mrs. Barry's bed linen and hair taken from the defendant were microscopically identical in all identifying characteristics. He concluded that these hairs from the bed could have come from the defendant. This evidence is a link in the

chain proving that the crime was committed by a Negro, and that that Negro was the defendant.

This assignment is overruled.

The Court has carefully examined all defendant's assignments of error which have been brought forward in his brief, and no error is made to appear which would warrant disturbing the verdicts and judgments below. All assignments of error of defendant are overruled.

In the trial in Superior Court we find

No error.