STATE OF NORTH CAROLINA v. CHARLES G. HILL III

No. 7012SC338

(Filed 26 August 1970)

1. **Arrest and Bail § 9— bail bond — defendant's right to release — misconduct of jailer**

   An accused is to be released when the required bail bond is given and approved; the conduct of the jailer who refuses to release a defendant after the proper bail is given violates the statute and is indefensible. G.S. 15-47.

2. **Constitutional Law §§ 32, 33— right to counsel — self-incrimination**

   Every person in North Carolina has the right to have counsel for his defense and not to be compelled to give self-incriminating evidence. N. C. Constitution, Art. I, § 11; U. S. Constitution, Amendment VI.

3. **Constitutional Law § 31— right of confrontation**

   A defendant in a criminal prosecution has the constitutional right to confront his accusers with other testimony.

4. **Constitutional Law § 31— right to prepare defense**

   Every defendant is entitled under the Constitution to have a reasonable opportunity to prepare his defense, which includes the right to consult with his counsel and to have a fair and reasonable opportunity, in the light of all attendant circumstances, to investigate, to prepare, as well as to present his defense. N. C. Constitution, Art. I, § 11; U. S. Constitution, Amendment XIV.

5. **Constitutional Law § 32— denial of right to counsel — confinement in jail — absence of prejudice**

   The refusal of the jailer to permit defendant's attorney to confer with defendant during his overnight stay in the jail on a charge of

drunken driving was a denial of a constitutional right; however, defendant failed to establish that this denial of the right to counsel irreparably prejudiced his defense and that he was entitled to a dismissal of the charges against him, since the evidence tended to show that defendant's request to contact counsel came *only* after the police had completed the· investigation of the offense, and since defendant failed to offer any evidence showing how he had been prejudiced.

6. **Constitutional Law § 32; Arrest and Bail § 9; Criminal Law § 84 — denial of right to bail and to counsel — effect on validity of evidence**

The refusal of the jailer to release the defendant on the night that defendant had given bail bond for the offense of drunken driving, and the jailer's refusal to permit defendant's attorney to confer with defendant during the night in jail, *held* not to destroy the validity of the police officers' observations and tests on defendant's intoxication, although the jailer's conduct violated defendant's rights to counsel and to bail, where the officers' observations and tests were completed prior to the denial of these rights, and where the record failed to show that defendant was prejudiced in his defense on the trial.

7. **Arrest and Bail § 3— arrest without warrant — misdemeanor**

G.S. 15-41 does not permit a police officer to arrest a person for a misdemeanor without a warrant unless it is committed in his presence or unless the officer has reasonable grounds to believe that it was committed in his presence.

8. **Criminal Law § 64— breathalyzer test — admissibility of results**

The results of a breathalyzer test made in compliance with G.S. 20-139.1 are properly admitted in evidence upon a showing that the defendant voluntarily submitted to the test.

9. **Criminal Law § 158— record on appeal — sound motion pictures — admissibility**

Where sound motion pictures showing defendant's intoxication were not made a part of the record on appeal, the question of the pictures' admissibility on the trial was not presented on appeal.

10. **Criminal Law § 154— record on appeal — duty of appellant**

It is the appellant's duty to see that the record on appeal is properly made up and presented to the appellate court.

APPEAL by defendant from *Johnston, J.,* 19 January 1970 Session of Superior Court held in FORSYTH County.

Defendant was tried upon a warrant, proper in form, in the Municipal Court, City of Winston-Salem, charging that he did, on 14 March 1968, operate a motor vehicle upon the public highways while under the influence of intoxicating liquor. On 22 March 1968 in the Municipal Court, City of Winston-Salem, the

State v. Hill

defendant entered a plea of not guilty, was adjudged to be guilty, and "ordered to pay $100.00 and costs of court." Defendant appealed and was tried in superior court. The jury returned a verdict of guilty as charged, and the defendant was ordered to pay a fine of $100.00 and the court costs. The defendant appealed to the Court of Appeals.

*Attorney General Morgan, Assistant Attorney General Melvin, and Staff Attorney Costen for the State.*

*Craige, Brawley, Horton & Graham by Hamilton C. Horton, Jr., and Alvin A. Thomas for defendant appellant.*

MALLARD, C.J.

The evidence tended to show that about 10:45 p.m. on the night of 13 March 1968, the defendant's automobile was involved in a collision with another automobile on Reynolda Road in Winston-Salem. The defendant's automobile crossed the center line of the road and struck the other vehicle at the front hinge of the front door.

William E. Stroupe testified he was the driver of the car that the defendant struck, that before the police officer arrived the defendant approached him, and that "(a)s he approached me I know that it was more than once and I know that it was more than twice he kept repeating, 'I don't think I hit you, but if I did I'm sorry. I don't think I hit you, but if I did I'm sorry.' "

One of the police officers of the City of Winston-Salem arrived at the scene at 10:47 p.m. The officer testified that in his opinion the defendant was under the influence of intoxicating liquor. The defendant stated to the police officer that he "was operating the 1964 Lincoln Continental." The record does not otherwise reveal the make of the automobiles involved. The police officer arrested defendant for operating a motor vehicle under the influence of intoxicating liquor "and advised him of his rights." After being arrested the defendant was taken to the police station, and sound motion pictures were taken of him during a sobriety test. At about 11:45 p.m. after voluntarily consenting thereto, the defendant was given a breathalyzer test which "indicated a reading between .23 and .24%." After these tests were made and just a few minutes after midnight, the defendant was served with a warrant charging him with operating an automobile under the influence of intoxicating liquor.

The arresting officer informed the defendant's attorney, over the telephone after the defendant had called him, that the defendant had been charged with operating an automobile under the influence of intoxicating liquor. The attorney testified upon a pretrial hearing, upon certain motions made by the defendant, that the officer said "that if I would come down there I could take him on home, that he could go home."

The uncontradicted evidence on this record tends to show that thereupon the attorney went to the police station and was told by the arresting officer that the defendant had already been booked and was across the street in jail. The attorney went to the jail and was informed that the defendant was locked up and was under a $300.00 bond. The record does not reveal at what time the attorney arrived at the jail. The attorney testified that the following transpired between him and the jailer with respect to permission to see the defendant and the release of the defendant:

> "The jailer stated that Mr. Hill was there, that he was locked up, and that he was under $300.00 bond. So I sat down in the jailer's office and called one of the local bondsmen and he sent a man down there to get Mr. Hill out on bond. I was not permitted to see my client at that time. The bondsman came down within ten or fifteen minutes and bond was posted and given to the deputy sheriff and I said, 'Well, let's have him so we can get out of here,' and it was getting after midnight.
>
> The jailer said, 'No, we are not going to let him out' and when I asked him why, he said, 'The four hour rule.' I said, 'What are you talking about?' and the jailer said, 'Well, we can't let the man out until he has been locked up here for four hours.' I said, 'Well, bond has been posted. The arresting officer called me and said to come down here and get him out.' The jailer said, 'Well, I am running this jail and you are not going to get him out of here until the four hours are up.'
>
> I was not permitted to see my client.
>
> \*    \*    \*
>
> The deputy who was acting as jailer was Weldon Keyser. There was another assistant or two whom I did not know. Mr. Keyser said, 'Chief Tucker said it was up to me, that I could do what I wanted to do.' I said, 'Well, what are you going to do?'

State v. Hill

Keyser went on back to where Mr. Hill was locked up around the corner from the jailer's office. You cannot see down this corridor. I heard him walking down the corridor, heard him rattle the bars or something, and then I heard Mr. Hill say, 'What do you want?' Keyser said, 'Nothing, I just wanted to see if you were here.'

Deputy Keyser came back and then I said, 'Okay, let me have him.' He said, 'I am not going to do it.' I said, 'Why?' Mr. Keyser said, 'The son-of-a-bitch is so drunk he can't stand up.'

It must have been after 2:00 a.m. by this time.

I said, 'If you are not going to let me take him, let me see him.' The deputy sheriff said, 'You are not going to see him, git.' And I got, and that is the end of it.

I understand that Mr. Hill was released at about 7:00 a.m. and I saw him later on that day."

G.S. 15-47 provides, among other things, that a person arrested shall be permitted to give bail bond, except in capital cases. Operating a motor vehicle under the influence of intoxicating liquor is a misdemeanor and is not a capital case. The uncontradicted evidence in this case indicates that the defendant was permitted by proper authority to give bail, but after doing so, the jailer refused to release him. The evidence that the defendant was not released by the jailer until the next morning at about 7:00 a.m. is also uncontradicted. This was approximately five hours after the defendant had given the bail bond required.

[1]   G.S. 15-47 means that when the required bail bond is given and approved, the accused is to be released. The conduct of a jailer who refuses to release a defendant, after the proper bail bond is given and he is informed thereof, violates the statute and is indefensible. However, in this case we approve of that portion of the dissenting opinion of Judge Finley in *City of Tacoma v. Heater,* 409 P. 2d 867 (1966), in which it is stated:

"(T)he courts do have a responsibility and the authority for taking corrective action respecting over-zealous, overly aggressive police practices which complicate and negate the prosecution of law violations and/or may unreasonably deprive the law violator of life, liberty, and the pursuit of happiness without due process of law. Corrective action, however, *does not necessitate turning criminal offenders*

*loose as a form of shock treatment for the police.* Such judicial experimentation has too little, if any, propensity to produce the intended results; and furthermore, in my judgment, such experimentation is too inimical to other social values and too dangerous to society and law-abiding citizens to be indulged by the judiciary."

[2] It is elementary law that every person in North Carolina has the right to have counsel for his defense and not be compelled to give self-incriminating evidence. N. C. Const. art. I, § 11; U. S. Const. amend. VI. Also, G.S. 15-4 provides that:

"Every person, accused of any crime whatsoever, shall be entitled to counsel in all matters which may be necessary for his defense."

[3, 4] A defendant has the constitutional right, in a criminal prosecution, to confront his accusers with other testimony. Every defendant is entitled under the Constitution to have a reasonable opportunity to prepare his defense. This includes the right to consult with his counsel and to have a fair and reasonable opportunity, in the light of all attendant circumstances, to investigate, to prepare, as well as to present his defense. This right must be accorded every person charged with a crime. N. C. Const. art. I, § 11; U. S. Const. amend. XIV; *State v. Whisnant,* 271 N.C. 736, 157 S.E. 2d 545 (1967); *State v. Graves,* 251 N.C. 550, 112 S.E. 2d 85 (1960); *State v. Hackney,* 240 N.C. 230, 81 S.E. 2d 778 (1954); *State v. Speller,* 230 N.C. 345, 53 S.E. 2d 294 (1949); *State v. Gibson,* 229 N.C. 497, 50 S.E. 2d 520 (1948); *State v. Whitfield,* 206 N.C. 696, 175 S.E. 93 (1934), *cert. denied,* 293 U.S. 556 (1934).

In the case of *State v. Speller, supra,* Justice Ervin, speaking for the Court, said:

"Both the State and Federal Constitutions secure to every man the right to be defended in all criminal prosecutions by counsel whom he selects and retains. N. C. Const., Art. I, sec. 11; U. S. Const., Amend. XIV. This right is not intended to be an empty formality. It would be a futile thing, indeed, to give a person accused of crime a day in court if he is denied a chance to prepare for it, or to guarantee him the right of representation by counsel if his counsel is afforded no opportunity to ascertain the facts or the law of the case. As the Supreme Court of Georgia declared in *Blackman v. State,* 76 Ga. 288: 'This constitutional privilege would amount to nothing if the counsel for the accused are not

allowed sufficient time to prepare his defense; it would be a poor boon indeed. This would be "to keep the word of promise to our ear and break it to our hope." ' Since the law regards substance rather than form, the constitutional guaranty of the right of counsel contemplates not only that a person charged with crime shall have the privilege of engaging counsel, but also that he and his counsel shall have a reasonable opportunity in the light of all attendant circumstances to investigate, prepare, and present his defense. *State v. Gibson*, 229 N.C. 497, 50 S.E. 2d 520; *S. v. Farrell*, 223 N.C. 321, 26 S.E. 2d 322."

[5] The refusal of the jailer to permit the defendant's attorney to confer with him that night while he was there in the jail was a denial of a constitutional right. *Escobedo v. Illinois*, 378 U.S. 478, 12 L. Ed. 2d 977, 84 S.Ct. 1758 (1964). The defendant contends that this denial of his constitutional right resulted in irreparable prejudice to his defense and that, therefore, this court should vacate the judgment and dismiss the charges against him.

In support of his contentions, the defendant cites and relies mainly upon the cases of *City of Tacoma v. Heater, supra; State v. Krozel*, 24 Conn. Sup. 266, 190 A. 2d 61 (1963); *Winston v. Commonwealth*, 188 Va. 386, 49 S.E. 2d 611 (1948).

In City of *Tacoma v. Heater, supra*, the defendant denied he was under the influence of intoxicating liquor and upon arrival at the jail requested and was denied permission to telephone his attorney. Thereafter, certain physical and coordination tests were made by the police officers to ascertain his sobriety. The defendant's attorney stated that if he had been called, he would have arranged for a blood test to determine the defendant's condition. The Supreme Court of Washington, with three members dissenting, held that the defendant was prevented from obtaining evidence which might tend to prove his innocence. In the instant case the testimony of the defendant's attorney tended to show that the request to contact counsel came *after* the police had completed their investigation. Also, it is significant that the testimony of the defendant's attorney does not reveal in what way the defense of the defendant was prejudiced by the failure to release the defendant on bail that night or the failure to permit counsel to talk with the defendant that night.

In the case of *Winston v. Commonwealth, supra,* the defendant was arrested without a warrant for operating an auto-

mobile on a state highway while under the influence of intoxicating liquor. At the time of his arrest, the defendant protested and continued to protest to the arresting officer that he had not taken anything intoxicating that day and that he was not intoxicated. He repeatedly asked to be taken to a physician in order that he might be examined and his true condition medically determined. These requests were refused. When he was taken to the jail, the defendant requested that he be taken before a proper official in order that he might be admitted to bail. This request was denied. Shortly after the defendant arrived at the jail, an acquaintance of the defendant also requested that the defendant be granted the opportunity of applying for bail. This request was refused. The defendant had been arrested and taken to the jail where he was locked up at 4:30 p.m. About 9:00 p.m. the defendant was taken to an assistant trial justice, and a warrant was issued for him, after which he was admitted to bail. Another person was arrested with the defendant and testified that the whiskey found in the car did not belong to defendant and that the defendant had drunk no intoxicating liquor that day. The Court found that the failure of the officers to take the defendant to a physician was not such a violation of his rights as to require a new trial. However, the Court held that the failure to take the defendant "forthwith" before a judicial officer to determine his eligibility for bail as required by statute was prejudicial. The Court held that the failure of the arresting officer and the jailer to perform their duties was such as to deprive the defendant of his constitutional right to call for evidence in his favor; that his subsequent conviction lacked the required due process; and that since the opportunity denied the defendant of producing such evidence could not be remedied at a new trial, the judgment was reversed and the prosecution dismissed.

The Heater case and the Winston case are distinguishable from the case at bar.

In *State v. Krozel, supra,* after the defendant was arrested for operating an automobile under the influence of intoxicating liquor and after the interrogation of the defendant by the officers had been concluded and sobriety tests had been administered, defendant requested and was denied permission to call either his lawyer or his wife. He was arrested at 10:50 p.m. The policy of the State Police in Connecticut was to deny a person access to a telephone during the time when, in the opinion of the police, he was intoxicated. The trial court found that the

defendant was capable of using the telephone. The defendant was released from custody at 8:00 a.m. on the following day. The Circuit Court of Connecticut in the Twelfth Circuit, with one judge concurring and one judge dissenting, ordered the judgment of conviction set aside and remanded the case with direction that a judgment of not guilty be entered. While the facts in the majority opinion in Krozel, the correctness of which are challenged in the dissenting opinion, appear to be somewhat similar to the case at bar, and the majority opinion is in point with the contentions of the defendant as to the law involved, we are not persuaded that the majority opinion is a correct statement of the law applicable to the case before us.

In the case before us the defendant did not testify and offered no evidence at his trial, but he did testify on *voir dire* as follows:

"My name is Charles G. Hill III. I am the defendant in this case.

I was jailed on the night of March 13, and on into the morning of March 14 in the county jail. I was released at approximately 7:00 a.m. in the morning of March 14.

I had been arrested approximately around 10:30 or so. After my arrest I requested the right to see and have the advice of counsel. The reason I felt I needed counsel was that I guess I was nervous and I was around a lot of police officers, and I felt like I needed to call somebody to know what is right, the right thing to do. During all of my questioning and all of my tests, the only ones around me were police officers.

I finally was permitted to call a lawyer around 12:00 or maybe a little after 12 midnight. At no time from the time at which I made that telephone call until I finally walked out of the jail at 7:00 the next morning did I have the opportunity to consult with counsel.

I never told the police that I did not want an attorney. I cannot say for certain what time it was when they advised me that I could have an attorney if I wanted one. They only offered me the right to make a telephone call one time. That is the time I did make the call: They did not permit me access to a telephone while I was up there taking the breathalyzer tests and all.

State v. Hill

CROSS EXAMINATION:

I remember Officer Tierney advising me of my rights at the scene of the accident. I remember him saying something about a right to counsel. He asked me something about whether I wanted to go to the hospital and whether I was hurt and I told him that I didn't think I was hurt real bad: I knew I was bleeding. So I said I didn't want to have any medical attention. At the police station I was brought in and they took a film of me. Then I believe they took a breathalyzer test. I did not say that I wanted to take the breathalyzer test but I did not refuse it and I took a breathalyzer test. It was after this that I made my telephone call. The telephone call was after the investigation had been concluded, and the warrant had been issued, and the bond had been set. I may have signed something in the process of whatever it was when they were putting me through the tests. The investigation had already been conducted when I made the telephone call to get my attorney. I called my brother-in-law and he was supposed to come down.

REDIRECT EXAMINATION:

My brother-in-law is also my attorney. He had represented me in a number of other times as my attorney, and I considered him as my attorney."

It is significant that the testimony of the defendant does not reveal in what way his defense was prejudiced by the failure to release him on bail that night or the failure to permit counsel to talk with him that night.

Defendant's testimony does not indicate at what time after his arrest he requested the right to see and have counsel. The evidence of the State was that the defendant was told on several occasions that he had the right to have an attorney and that the defendant told one of the police officers that "(h)e didn't need one." After the *voir dire,* the trial judge found that the warrant was served on the defendant, the bond was fixed, and thereafter, he requested and was granted the privilege of contacting his attorney.

The testimony of the defendant also does not show that on that night there was any interrogation or further investigation of the defendant after he requested an attorney or after the jailer refused to release him on bail and refused to permit his attorney to confer with him. Neither does the record show that

the violation of these rights resulted in any evidence being obtained against him.

**[6]** On this record the denial by the jailer to release the defendant that night after bail bond had been given and the refusal of the jailer to permit defendant's counsel to confer with him that night, did not eliminate or destroy the validity of what the police officers had theretofore observed and the tests made. There is nothing in this record which indicates that the defendant was denied the effective assistance of counsel at the trial because the jailer refused to release the defendant that night and refused to permit his lawyer to confer with him that night. There is nothing in this record to indicate that these denials of his rights in any way impaired his defense. See 5 A.L.R. 3d 1360, 1383; see also *Coleman v. Alabama*, 26 L. Ed. 2d 387, 90 S. Ct. ___ (1970).

The defendant was arrested on 13 March 1968, was first tried in the Municipal Court of the City of Winston-Salem on 22 March 1968, and upon appeal, he was tried at 19 January 1970 Session of Superior Court held in Forsyth County. No contention is made in this record that he did not have time to prepare his case for trial.

We hold that the factual situation presented on this record does not reveal that the defendant was prejudiced to the extent of infecting his trial with an absence of fundamental justice.

**[7]** The defendant was arrested without a warrant for the misdemeanor of operating an automobile on a public highway while under the influence of intoxicating liquor. The evidence reveals that the offense was not committed in the presence of the arresting officer. The statute does not permit a police officer to arrest a person for a misdemeanor without a warrant unless it is committed in his presence or unless the officer has reasonable grounds to believe that it was committed in his presence. G.S. 15-41. We are not here concerned with whether the defendant could have or should have been arrested for public drunkenness. The record is silent on the subject. Neither are we here concerned with whether a police officer who arrives at the scene of an automobile collision should be permitted to arrest, without a warrant, a person who is under the influence of intoxicating liquor and who informs the officer that he was the operator of one of the vehicles involved—that is a matter for the Legislature to determine. Also, we are not here concerned with what remedy the defendant has, if any, against those who violated his rights.

Defendant argues and contends that the court committed error in admitting the results of the breathalyzer test and the sound motion pictures taken of him after his illegal arrest and before the warrant was served on him.

[8] The applicable statute provides that a person who operates a motor vehicle on the highways in North Carolina is deemed to have given consent to a chemical test of his breath for the purpose of determining the alcoholic content of his blood if arrested for any offense arising out of acts alleged to have been committed while the person was driving a motor vehicle while under the influence of intoxicating liquor. G.S. 20-16.2(a). The breathalyzer test is a chemical test for the testing of a person's breath for the purpose of determining the alcoholic content of his blood. There is no contention made that the test itself was improperly administered. The defendant testified on *voir dire* that he was advised of his rights by the officer at the scene of the accident and that he did not refuse to take the breathalyzer test. The trial judge on the *voir dire* made no findings that the arrest of the defendant or the giving of the breathalyzer test and taking of the pictures was accompanied by violent or oppressive circumstances; neither does the evidence indicate that it was. *State v. Moore*, 275 N.C. 141, 166 S.E. 2d 53 (1969). On the contrary, the trial judge found that the defendant "voluntarily submitted to the State's Breathalyzer test." The results of the breathalyzer test made in compliance with G.S. 20-139.1 are properly admitted in evidence upon a showing that the defendant voluntarily submitted to the test. 2 Strong, N.C. Index 2d, Criminal Law, § 64.

[9, 10] The sound motion pictures were not made a part of the record on appeal; therefore, the competency as to the admissibility thereof is not presented on this appeal. It was appellant's duty to see that the record was properly made up and presented to the appellate court. *State v. Benton*, 276 N.C. 641, 174 S.E. 2d 793 (1970); *State v. Atkinson*, 275 N.C. 288, 167 S.E. 2d 241 (1969); *State v. Stubbs*, 265 N.C. 420, 144 S.E. 2d 262 (1965). On this record no prejudicial error is made to appear by the admission of the sound motion pictures, which evidence was offered for the purpose of illustrating the testimony of the arresting officer.

We have carefully considered all of defendant's assignments of error that have been properly presented and hold that on this record no prejudicial error has been made to appear of such nature as to entitle him to a new trial or to vitiate the criminal

proceedings against him and entitle him to a dismissal of the charges. We do not believe that the result here reached is violative of the principles enunciated in *State v. Speller, supra.*

In the trial we find no error.

No Error.

MORRIS and GRAHAM, JJ., concur.