STATE OF NORTH CAROLINA v. AMOS GRAINGER

No. 7513SC994

(Filed 16 June 1976)

1. Constitutional Law § 30; Criminal Law § 63— indigent defendant — failure to provide psychiatrist at State expense — no error

The trial court did not abuse its discretion in denying the indigent defendant's motion for the appointment of a psychiatrist at State's expense to interview him and testify in his behalf at trial, where defendant did not, as required by G.S. 15A-959(a), give notice of intention to raise the defense of insanity.

2. Criminal Law § 75— drinking defendant — statement to officer prior to arrest — voluntariness — admissibility

A statement by defendant to a law enforcement officer made before defendant was arrested was properly admitted in his trial for second degree murder, though defendant had apparently been drinking before he made the statement, where the officer testified that defendant did not appear to be sleepy or confused but appeared coherent, and the officer advised defendant of his rights, asked defendant if he understood them, and defendant replied in the affirmative.

APPEAL by defendant from Lee, Judge. Judgments entered 11 September 1975 in Superior Court, BRUNSWICK County. Heard in the Court of Appeals 18 March 1976.

By separate indictments defendant was charged with the murders in the first degree of Annie Lou Dykes and Elwood Matthews. Without objection the two cases were consolidated for trial, and the State elected to try defendant for murders in the second degree. It was stipulated that Dykes and Matthews died on 9 November 1974 as a result of gunshot wounds.

L. W. Davis, a highway patrolman, testified that he was called to the home of defendant's brother in the Town Creek Area of Brunswick County on the night of 9 November 1974. On arriving there at approximately 10:30 p.m., he found defendant present. On voir dire the officer testified that after he advised defendant of his rights, the defendant stated that he had shot his "wife" and her boyfrieind after he discovered them in an embrace on the bed in the bedroom of defendant's home. Davis testified that defendant appeared to have been drinking but that he was coherent at the time he made the statement. Defendant offered on voir dire the testimony of his sister-in-law and his brother who stated they observed him on the night in question after the shooting, that defendant had been drinking heavily, was "crying and jerking like someone who was having a convulsion," and that he did not appear to be in his right mind. Defendant testified on voir dire that the first thing he remembered about the incident was waking up at his home, sitting in a chair, bleeding from the forehead, in a very disoriented state, and that it took him three or four days to get back to normal. Trooper Davis was recalled on voir dire and testified that defendant was not under arrest at the time he made his statement. The court made findings of fact and allowed the testimony of Davis to be admitted before the jury.

Defendant testified before the jury in substance as follows: He was not married to Annie Lou Dykes, but he lived with her, loved her, and considered her as his wife. Early on 9 November 1974 Matthews came to his home and they drank whiskey and beer. Late in the day, he lay down on a day bed in his living room and went to sleep. When he woke up, he heard a noise in the bedroom. Upon investigating, he found Matthews and Dykes in the performance of an unnatural sex act. He turned to leave room and heard Annie Lou Dykes shout, "Get him. Get him." As he was leaving the room through the door and while his back was turned to the bed, he felt something hit him hard over the head and he saw a flash of light. His loaded shotgun was sitting beside the door through which he was walking. The next thing he remembers is waking up in his living room, sitting on the side of his day bed with blood dripping from his forehead. He was disoriented and everything appeared strange. He returned to the bedroom to find the two lying on the bed apparently dead. The shotgun was also lying on the bed. He then left for his brother's home to report what he had found.

Defendant's sister-in-law testified that when she saw defendant on the night in question he did not appear to have control of his normal faculties and in her opinion he was not sane.

The jury found defendant guilty of voluntary manslaughter in each case, and from judgments imposing prison sentences, defendant appealed.

*Attorney General Edmisten by Associate Attorney Acie L. Ward for the State.*

*John R. Hughes for defendant appellant.*

PARKER, Judge.

[1] Defendant first contends that in denying his timely motion, made on 15 April 1975, for the appointment of a psychiatrist at State expense to interview him and testify in his behalf at trial, the Court denied his Sixth Amendment right to confront his accusers. He asserts that, being indigent, he was entitled to be put on the same footing as all other defendants in criminal actions, and, since he could not afford to pay the psychiatrist, the State was responsible to provide one for him.

Every criminal defendant has the constitutional right to confront his accusers with other testimony, including "the right to consult with his counsel and to have a fair and reasonable opportunity, in the light of all attendant circumstances, to investigate, to prepare, as well as to present his defense." *State v. Hill,* 9 N.C. App. 279, 284, 176 S.E. 2d 41, 44 (1970), and cases cited therein; *State v. Baldwin,* 276 N.C. 690, 174 S.E. 2d 526 (1970). However, in *United States ex rel. Smith v. Baldi,* 344 U.S. 561, 97 L.Ed. 549, 73 S.Ct. 391 (1953), the United States Supreme Court held there was no constitutional mandate placed upon the States to appoint a psychiatrist to make a pretrial examination.

G.S. 7A-454 provides as follows:

"*Supporting services.*—The court, in its discretion, may approve a fee for the service of an expert witness who testifies for an indigent person, and shall approve reimbursement for the necessary expenses of counsel. Fees and expenses accrued under this section shall be paid by the State."

In appropriate circumstances our courts do have power to order a mental or physical examination at State expense, but

State v. Grainger

this procedure is left to the sound discretion of the court. The 15 April 1975 motion to the court submitted by defendant's counsel simply states, "That the defendant is an indigent person with Court appointed counsel, and, in the opinion of counsel, psychiatric evidence will be necessary and proper in behalf of the defense of the charges of murder against the Defendant, Amos Grainger." Without more, we see no abuse of the trial court's discretion in denying this motion. See, Annot., 34 A.L.R. 3d 1256, Right of Indigent Defendant in Criminal Case to Aid of State by Appointment of Investigator or Expert (1970). We note that defendant did not, as required by G.S. 15A-959(a), give notice of intention to raise the defense of insanity, nor did anything occur at his trial which suggested the existence of any question as to his "incapacity to proceed" under G.S. 15A-1001.

[2] Defendant's second assignment of error presents his contention that his statement made to Trooper L. W. Davis on the night of 9 November 1974 should not have been admitted in evidence. He concedes that, as his confession was not made while he was in custody and was not the result of police interrogation, *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602 (1966), is not applicable, but argues that his statement should not have been admitted because it was not knowingly, understandingly, and voluntarily made. Trooper Davis testified that he talked with the defendant on the night in question. Upon objection by defendant's attorney, the Court excused the jury in order to conduct a voir dire on the admissibility of any statement made by the defendant. On voir dire Trooper Davis stated that he interrupted defendant's conversation to advise him of his rights; that he asked defendant if he understood his rights and defendant replied in the affirmative; that although it was apparent defendant had been drinking, he did not appear to be sleepy or confused; and that defendant appeared coherent. Defendant offered testimony of two witnesses who testified that at this time he had been heavily drinking and did not appear to be in control of his faculties. The Court made findings of fact stating, in pertinent part, that any statement made by defendant to Trooper Davis on 9 November 1974 was made "voluntarily, knowingly, and independently." Such a finding by the Court, when based upon competent evidence, as it is in this case, is binding upon appellate review. *State v. Bishop,* 272 N.C. 283, 158 S.E. 2d 511

---

---

(1968). We find the statement made by defendant to Trooper Davis to have been properly admitted.

No error.

Judges BRITT and CLARK concur.